**SO ORDERED.**

**SIGNED this 08 day of August, 2012.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

LICHTIN/WADE, LLC,                       CHAPTER 11
                                         CASE NO. 12-00845-8-RDD
    DEBTOR

ORDER SUSTAINING DEBTOR'S
OBJECTION TO PROOF OF CLAIM OF ERGS II, L.L.C.

Pending before the Court is the Objection to Claim (the "Objection") filed by Lichtin/Wade, LLC (the "Debtor") on May 29, 2012, and the Response to the Debtor's Objection to Claim filed by ERGS II, L.L.C. ("ERGS") on July 3, 2012. On July 10, 2012, the Court held a hearing on the Objection and Response in Wilson, North Carolina.

**BACKGROUND**

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on February 2, 2012. The Debtor owns two office buildings known as Wade I and Wade II, plus approximately twelve acres of vacant land upon which three additional office buildings may be constructed, referred to as Wade III, Wade IV, and Wade V (the "Wade Land"). On April 24, 2012, the Debtor and ERGS entered into a stipulation agreement, as to the value of the Wade Land at $38,390,000.00. Prior to the date of filing, the Debtor and Branch Banking and Trust Company

("BB&T") entered into four promissory notes (the "Secured Notes"),[1] secured by all of the Wade Land and certain of the Debtor's personal property. The four Secured Notes matured on December 15, 2011. On January 30, 2012, BB&T sent the Debtor a notice of default and demand for payment (the "Demand Letter"), asserting that the Secured Notes had matured and that the balance owed by the Debtor to BB&T was $39,045,796.65.[2] The Demand Letter stated that the interest, at the per diem default rate of $8,923.63, would begin accruing after January 30, 2012. On February 15, 2012, BB&T filed a Response in Opposition to Debtor's Emergency Motion for Authorization to Use Cash Collateral Pursuant to 11 U.S.C. § 363 and for Turnover of Rental Receipts ("Response in Opposition"), whereby BB&T stated the outstanding balance owed by the

---

[1]

|        | Dated              | Original Principal Amount |
|--------|--------------------|---------------------------|
| Note 2 | May 3, 2007        | $15,035,000.00            |
| Note 3 | August 31, 2007    | $5,665,512.00             |
| Note 4 | August 31, 2007    | $16,800,000.00            |
| Note 7 | September 13, 2011 | $1,950,000.00             |

[2]

|        | Principal        | Interest    | Fees (other than attorneys' fees) | Total            | Default Rate |
|--------|------------------|-------------|-----------------------------------|------------------|--------------|
| Note 2 | $14,492,016.07   | $92,587.88  | $22,610.84                        | $14,607,214.79   | $3,342.31    |
| Note 3 | $5,653,454.92    | $146,517.14 | $5,917.68                         | $5,805,889.74    | $1,329.16    |
| Note 4 | $16,381,584.88   | $239,932.56 | $38,291.61                        | $16,659,809.05   | $3,809.10    |
| Note 7 | $1,949,999.89    | $22,629.66  | $253.49                           | $1,972,883.04    | $452.06      |
| Totals | $38,477,055.76   | $501,677.24 | $67,073.62                        | $39,045,796.62   | $8,932.63    |

Debtor on the Secured Notes was $39,063,661.91. The amount set forth in BB&T's Response in Opposition equals the amount set forth in the Demand Letter, plus two days of default interest for January 31, 2012, and February 1, 2012. On March 27, 2012, BB&T entered into an agreement with ERGS, whereby ERGS purchased from BB&T all of its rights, title, and interests in and to the Secured Notes. On May 2, 2012, ERGS filed proof of claim number 10, for the secured amount of $39,236,631.03 in principal, interest, and fees (the "Proof of Claim"). On May 29, 2012, the Debtor filed the Objection to Claim, objecting to ERGS' Proof of Claim.

The Debtor objected to ERGS' inclusion of $172,969.12, the difference between BB&T's stated outstanding balance of $39,063,661.91, and ERGS' balance stated on the Proof of Claim, $39,236,631.03. On April 12, 2012, the Debtor, seeking to determine how the additional charges were calculated, sent ERGS a Request for Production of Documents and Interrogatories. ERGS' responses did not satisfy the Debtor's request. ERGS did not clarify how the additional charges were calculated until the date of the hearing on July 10, 2012, when its counsel stated that the charges included default interest from the day after the date of maturity, December 16, 2011, through January 29, 2012. On July 21, 2012, ERGS filed the Supplemental Response of ERGS II, L.L.C. to the Debtor's New Arguments Made at the July 10, 2012 Hearing in Support of its Objection to Claim (the "Supplemental Response"). In the Supplemental Response, ERGS states that the amount listed on the Proof of Claim includes default interest from December 16, 2011 through January 29, 2012.[3]

---

[3] The Court assumes the $172,969.12 figure is computed by subtracting the contract per diem rate of interest from the default per diem rate of interest and multiplying the difference by the 45 days which accrued from December 16, 2011 to January 30, 2012.

**DISCUSSION**

Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). Section 502 further provides:

> (b) Except as provided in [other sections], if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount. . . .

11 U.S.C. § 502(b). If a party in interest objects to a claim filed under § 502, the party in interest "must introduce evidence to rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (citing Fed. R. Bankr.P. 9017, Fed.R.Evid. 301). If the party in interest does introduce evidence that rebuts the claim's validity, "the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence." *Id.*

ERGS' Proof of Claim was properly executed and filed, and thus "constitute[s] prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). In response, the Debtor filed a timely objection to the claim. The Debtor introduced evidence objecting to the claims validity, arguing that ERGS is estopped from retroactively charging default interest prior to January 30, 2012, when BB&T declared the Secured Notes in default. The Debtor rebutted the claim's presumptive validity, therefore shifting the burden to ERGS to prove the amount and validity of the claim by a preponderance of the evidence. *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004).

The Debtor characterizes ERGS' claim for pre-petition default interest accruing from December 16, 2011 through January 29, 2012, as an effort to assess a retroactive charge that is

unwarranted by the Promissory Note and the Deed of Trust. The relevant language in the Promissory Note states:

> The failure to pay any part of the principal or interest when due on this Note . . . or in the event of a default under any of the Agreements . . . then any one of the same shall be a material default hereunder and this Note and other debts due the Bank . . . shall immediately become due and payable *at the option of the Bank* without notice or demand of any kind . . . . From and after any event of default hereunder, interest shall accrue. . . .

Promissory Note at 2, ¶ 3 (emphasis added). The relevant language in the Deed of Trust states:

> 19. EVENTS OF DEFAULT. Grantor shall be in default under this Deed of Trust upon the occurrence of any of the following:
> (a) Default in the payment or performance of any of the Debt . . . *in the Note or other Document* . . . or in any contract between any third party and Beneficiary made for the benefit of Grantor . . . .
> 20. REMEDIES OF BENEFICIARY UPON DEFAULT. Upon the occurrence of any event of default, *Beneficiary may, at its option*, without prior notice to Grantor, declare the Debt to be immediately due and payable in full . . . .

Deed of Trust at 5, ¶ 19, 20 (emphasis added). The Debtor relies on the words "Beneficiary may, at its option," arguing that the beneficiary of the Promissory Note and Deed of Trust must make a decision, or act to declare the Secured Notes in default, before the beneficiary may charge the default interest. Therefore, the Debtor argues that because BB&T, at its option, chose not to declare the Secured Notes in default until January 30, 2012, ERGS is estopped from retroactively charging additional default interest from December 16, 2011 through January 29, 2012.

In its Supplemental Response, ERGS argues that the Court should not consult the Deed of Trust, but should instead look solely to the language found in the Promissory Notes. ERGS relies on the words "from and after any event of default . . . interest shall accrue" at the default rate. ERGS argues that this mandatory "shall" language allows it to recover default interest from the date of maturity, when the default occurred, even though BB&T chose not to declare the Secured Notes in

5

default. Therefore, ERGS argues that its claim is a straightforward pre-petition claim under 11 U.S.C. § 502, and that the default interest accrued pursuant to specific language set out in the Promissory Notes.

Section 502 generally allows a claim for pre-petition interest, including interest at the default rate if provided for in the parties' agreement, in accordance with the terms of the contract. *In re Harvest Oaks Drive Associates, LLC*, 10-03145-8-SWH, 2011 WL 124495 (Bankr. E.D.N.C. Jan. 14, 2011). In *In re Deep River Warehouse, Inc.*, the court stated that it must "read the terms of the Loan Documents in context, giving each term its plain meaning." *In re Deep River Warehouse, Inc.*, 04-52749, 2005 WL 1513123 (Bankr. M.D.N.C. June 22, 2005). In *In re Harvest Oaks Drive Associates, LLC*, the court looked to the language found in both the promissory note and the deed of trust, noting that the court must "first [look] to the language of the relevant loan documents." *In re Harvest Oaks Drive Associates, LLC*, 10-03145-8-SWH, 2011 WL 124495 (Bankr. E.D.N.C. Jan. 14, 2011). In this case, the Court must look to the language "at its option," found in both the Promissory Note and the Deed of Trust, to determine if the lender was required to take an action before declaring the default rate of interest due and owing.

An option is "the right or power to choose; something that may be chosen." *Black's Law Dictionary* 1203 (9th ed. 2009). Similar to the Promissory Note in this case, the note in *United States v. Cardinal* stated "(i)n case of failure of the undersigned to pay any installment on its due date, this note shall, *at the option of the holder*, become immediately due and payable . . . ." *United States v. Cardinal*, 452 F. Supp. 542, 543 (D. Vt. 1978) (emphasis added). That court quoted *Moresi v. Far West Services, Inc.*:

> The law is well settled that where the acceleration of the installment payments in cases of default is optional on the part of the holder, then the entire debt does not become due on the mere default of payment but affirmative action by the creditor must be taken to make it known to the debtor that he has exercised his option to accelerate, even though the note itself, as is the case here, waives notice of demand.

*United States v. Cardinal*, 452 F. Supp. 542, 547 (D. Vt. 1978) (quoting *Moresi v. Far West Services, Inc.*, 291 F. Supp. 586, 588 (D. Hawaii 1968). In *In re Crystal Properties, LTD., L.P.*, the note stated "should default be made in any payment provided for in this note . . . *at the option of the holder* hereof and without notice or demand, the entire balance of principal and accrued interest then remaining unpaid shall become immediately due and payable . . . . " *In re Crystal Properties, LTD., L.P.*, 268 F.3d 743, 745 (9th Cir. 2001). That court held that "the addition of the words 'without demand or notice' does not alter the requirement that the holder of the note must carry out some affirmative act to exercise its option. . . ." *Id*. at 750. Therefore, the language "at its option" suggests that a default does not occur until the lender exercises the option to declare a default, regardless of the words "without notice or demand." In this case, BB&T did not choose to act on its option to declare the default on the date of maturity, instead choosing to act when it sent the Demand Letter to the Debtor on January 30, 2012.

Other courts have considered the question of an assignee's entitlement to retroactive default interest when the original lender did not assert its entitlement to the default rate from the date of default. The bankruptcy court in *In re Crystal Properties, LTD, L.P.* stated:

> The real question is, as has always been, can [the creditor] come in as a successor in interest and go back and retroactively apply default interest from a period long before it had any connection with this loan, notwithstanding anything else that went on, and the answer, I think, can't be yes.

7

*In re Crystal Properties, LTD, L.P.*, 268 F.3d 743, 747 (9th Cir. 2001). Further, the bankruptcy court reasoned "that it would be inequitable to allow [the creditor] to recover the default interest rate in a period during which it was not actively enforced by [the creditor's] predecessors in interest." *In re Harvest Oaks Drive Associates, LLC*, 10-03145-8-SWH, 2011 WL 124495 (Bankr. E.D.N.C. Jan. 14, 2011) (citing *In In re Crystal Properties, LTD, L.P.*, 268 F.3d 743, 747 (9th Cir. 2001)).

In *In re Sweet*, the assignee of the note argued that the language of the note, which stated "in the event of a default, the terms of the Note specifically provide the Note holder may *in its discretion* determine all amounts due and owing . . . ," allowed it to retroactively apply the default rate of interest beginning from the time the debtor stopped making payments on the note; even though the assignee was not the holder of the note at the time the default occurred. *In re Sweet*, 369 B.R. 644, 651 (Bankr. D. Colo. 2007). However, the court rejected that argument and found "the original loan holder had never expressed any intent to charge default interest, and that the assignee could not 'retroactively substitute his discretion for that of [the original lender] in order to apply default interest to the [notice] when [the lender] first noted a default in the Note.'" *In re Harvest Oaks Drive Associates* 10-03145-8-SWH, 2011 WL 124495 (Bankr. E.D.N.C. Jan. 14, 2011) (citing *In re Sweet*, 369 B.R. 644, 651 (Bankr. D. Colo. 2007)).

ERGS carries the burden of proving the amount and validity of the claim by a preponderance of the evidence. *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004). Although ERGS' Supplemental Response states that the default rate can be initiated at any event of default, it fails to present any basis for its retroactive application of default interest. BB&T chose, "at its option," to wait until January 30, 2012 to declare the Secured Notes in default. Therefore, because the original loan holder, BB&T, did not express an intent to charge default interest on the date of maturity, the

assignee, ERGS, cannot retroactively substitute its judgment for that of BB&T.[4]  ERGS cannot retroactively charge the default interest from December 16, 2011 through January 29, 2012, because BB&T chose not to declare a default and apply the default interest until after January 30, 2012.

For the foregoing reasons, the Debtor's Objection to Claim is **SUSTAINED** to the extent the Proof of Claim filed by ERGS II, L.L.C. seeks to recover retroactive default interest from the date of maturity through January 29, 2012.  ERGS II, L.L.C.'s claim in the amount of $39,236,631.03 shall be reduced to $39,063,661.91.  Further, the claim of ERGS II, L.L.C. shall be treated as a secured claim in the amount of $38,390,000.00, and an unsecured claim in the amount of $673,661.91.  The pre-petition default interest in the amount of $172,969.12 is disallowed.

**SO ORDERED**.

## END OF DOCUMENT

---

[4]Having "the option" to declare a default and impose default interest on a borrower gives a financial institution flexibility to use its best business judgment if negotiations with the borrower are in progress, if a sale of the collateral may be pending, or if other circumstances exist which justify the financial institution to not exercise "the option" of declaring a default and imposing the default interest rate.