**SO ORDERED.**

**SIGNED this 28 day of August, 2012.**

_____
Randy D. Doub
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

LICHTIN/WADE, L.L.C.,                    CHAPTER 11
                                          CASE NO. 12-00845-8-RDD
    DEBTOR

**ORDER GRANTING DEBTOR'S MOTION FOR ORDER EXTENDING THE PERIOD IN WHICH TO CONFIRM THE DEBTOR'S PLAN PURSUANT TO 11 U.S.C. § 1121(c)(3) AND DENYING MOTION OF ERGS II, L.L.C. PURSUANT TO SECTIONS 1121(c)-(d) OF THE BANKRUPTCY CODE FOR AN ORDER TERMINATING THE EXCLUSIVITY PERIODS WITHIN WHICH THE DEBTOR MAY FILE AND SOLICIT ACCEPTANCES TO A PLAN OF REORGANIZATION**

Pending before the Court is the Debtor's Motion for Order Extending the Period in Which to Confirm the Debtor's Plan Pursuant to 11 U.S.C. § 1121(c)(3) (the "Motion") filed by Lichtin/Wade, L.L.C. (the "Debtor") on July 25, 2012, and the Objection of ERGS II, L.L.C. to Debtor's Motion for Order Extending the Period in Which to Confirm the Debtor's Plan Pursuant to 11 U.S.C. § 1121(c)(3) (the "Response") filed by ERGS II, L.L.C. ("ERGS") on August 10, 2012; and the Motion of ERGS II, L.L.C. Pursuant to Sections 1121(c) & (d) of the Bankruptcy Code for an Order Terminating the Exclusivity Periods within Which the Debtor May File and Solicit Acceptances to a Plan of Reorganization filed by ERGS on July 17, 2012 (the "ERGS Motion") and the Debtor's response to the ERGS Motion filed on August 10, 2012. The Court conducted a hearing

on the Motion and Response and the ERGS Motion and response in Wilson, North Carolina on August 13, 2012.

## BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 2, 2012. The Debtor owns two office buildings known as Wade I and Wade II, plus approximately twelve acres of vacant land upon which three additional office buildings may be constructed, referred to as Wade III, Wade IV, and Wade V (the "Property"). The Property is encumbered by several deeds of trust and assignment of rents originally in favor of Branch Banking & Trust Company ("BB&T"), securing a promissory note with unpaid principal and interest of $39,052,661.91 as of the petition date. On March 27, 2012, BB&T sold and assigned the underlying indebtedness to ERGS. ERGS filed claim number ten in the amount of $39,236,631.03 on May 2, 2012.[1]

On March 26, 2012, the Debtor filed the Plan of Reorganization (the "Plan") and Disclosure Statement. The Court entered the Order Conditionally Approving Disclosure Statement on March 28, 2012 and scheduled the hearing on confirmation of the Plan on May 30, 2012. On April 11, 2012, the Debtor withdrew the Plan and Disclosure Statement and then re-filed the Plan and the Disclosure Statement. The Court again entered the Order Conditionally Approving Disclosure Statement and indicated the hearing on confirmation of the Plan would remain scheduled on May 30, 2012. On May 16, 2012, the Court entered the Order Continuing Hearing for the plan

---

[1] The Debtor filed an objection to ERGS' claim on May 29, 2012 because in the claim, ERGS sought to recover interest at the default rate under the promissory note for periods prior to the declaration of default on the note. The Court sustained the Debtor's objection to claim, finding ERGS is allowed a secured claim in the amount of $38,390,000.00 and an unsecured claim in the amount of $673,661.91.

confirmation on the Motion of ERGS to July 10, 2012. After a hearing on the Motion of ERGS II, L.L.C. to Determine Classification of Claims, the Court referred the Debtor and ERGS to mediation by an order entered on May 30, 2012. The parties participated in a mediated settlement conference from approximately June 27, 2012 to July 20, 2012. Ultimately, the mediator declared the parties at an impasse.

On July 19, 2012, the Debtor filed the First Amended Plan of Reorganization (the "Amended Plan") and the First Amended Disclosure Statement. The Court entered the Order Conditionally Approving Amended Disclosure Statement on July 23, 2012 and set a confirmation hearing on September 17, 2012. On July 17, 2012, ERGS filed the ERGS Motion, seeking an order terminating the exclusivity periods within which the Debtor may file and solicit acceptances to a plan of reorganization pursuant to 11 U.S.C. § 1121(c)-(d), and terminating the period for the Debtor to exclusively file and solicit acceptances to a plan of reorganization. On July 25, 2012, the Debtor filed the Motion seeking to extend the period to exclusively file and solicit acceptances to a plan of reorganization. ERGS filed a disclosure statement of its own on July 26, 2012 and a competing plan of reorganization on July 27, 2012. ERGS filed the Response to the Motion on August 10, 2012.

In the Motion, the Debtor seeks to extend the exclusive period to file and solicit acceptances to a plan of reorganization until a hearing is held on the Motion on August 13, 2012. Pending the outcome of the hearing, the Motion also seeks to extend the exclusivity period until September 30, 2012, after the date set for the hearing on confirmation. The Court entered the Order Allowing Debtor's Motion for Order Extending the Period in Which to Confirm Debtor's Plan Pursuant to 11 U.S.C. § 1121(c)(3) on July 26, 2012, extending the exclusivity period until the hearing on August 13, 2012.

3

The Debtor argues that cause exists to extend the exclusivity period to a date after the scheduled confirmation hearing pursuant to 11 U.S.C. § 1121(d)(1). In support of the Motion, the Debtor contends that (1) the case is complex; (2) the Debtor is making good faith progress toward confirmation; (3) the Debtor is capable of paying its debts as they become due while maintaining adequate protection payments to ERGS; (4) the Debtor needs additional time to conduct discovery; and (5) the Debtor is not seeking extension of time to place pressure on creditors to vote in favor of the Amended Plan.

In the Response, ERGS contends there is insufficient cause to grant the Motion. ERGS rebuts the Debtor's arguments and incorporates the arguments contained in the ERGS Motion to terminate the exclusivity periods. In the ERGS Motion, ERGS asserts (1) the case is neither large nor complex; (2) the Debtor's plan is not confirmable on its face; (3) the Debtor has no reasonable prospects for filing a feasible, viable plan; (4) the amount of time elapsed is significant for a case of this type; (5) the Debtor has had sufficient time to negotiate and file a confirmable plan but has failed to do so; and (6) maintaining exclusivity is detrimental to ERGS and other creditors.

## **DISCUSSION**

Section 1121 of the Bankruptcy Code provides that for the 120 days after the date of the entry of the order for relief, the Debtor has the exclusive right to file a plan of reorganization. 11 U.S.C. § 1121(b). Furthermore, the Debtor has an additional sixty days to receive acceptances of the plan by each class of claims or interests that is impaired under the plan. 11 U.S.C. § 1121(c). The date of the order for relief is February 2, 2012. The deadline for the Debtor to file a plan of reorganization was June 1, 2012 and the deadline for the Debtor to obtain accepting votes for a plan

of reorganization was July 31, 2012, unless the time was reduced or extended by the court within the respective periods. 11 U.S.C. § 1121(d)(1).

The Debtor filed the Plan on March 26, 2012 and re-filed the Plan on April 11, 2012, both within the 120 day period.[2] The Debtor filed the Motion on July 25, 2012, before the exclusive period for the Debtor to solicit acceptances to a plan of reorganization expired on July 31, 2012. The Court extended the exclusivity period to receive acceptances of the Plan by each class of claims or interests that is impaired under the Plan to August 13, 2012 by an order dated July 26, 2012. Therefore, as of the date of the hearing, the exclusive period for the Debtor receive acceptances of the Plan by each class of claims or interests that is impaired under the Plan had not expired.

Pursuant to the Motion, the Debtor seeks to further extend the exclusivity periods set forth in 11 U.S.C. § 1121(b)-(c) and preclude any other party from filing a competing plan. In the ERGS Motion, ERGS requests the Court terminate the exclusivity periods and allow ERGS to solicit acceptances to the plan it filed on July 27, 2012.

Section 1121(d) provides that these exclusivity periods may be shortened or lengthened for "cause." "The determination of whether 'cause' exists is an issue of fact and the burden of proof to establish cause lies with the moving party." *In re Fountain Powerboat Indus., Inc.*, Nos. 09-07132-8-RDD, 09-07133-8-RDD, 09-07134-8-RDD, 09-07135-8-RDD, 2009 WL 4738202 at *2 (Bankr. E.D.N.C. 2009) (citing *In re Texaco, Inc.*, 81 B.R. 806, 813 (Bankr. S.D.N.Y. 1988)).

However, "cause" is not specifically defined in the Bankruptcy Code. As noted in *In re Fountain Powerboat Industries, Inc.*, the Court has found no Fourth Circuit cases that have

---

[2]The Debtor filed the Amended Plan on July 19, 2012 outside of the 120 day period. However, a "proponent of a plan may modify such plan at any time before confirmation," so long as the modification complies with sections 1122 and 1123. 11 U.S.C. § 1127.

considered this issue. However, in *Fountain Powerboat*, the Court found in making a determination of whether "cause" exists to extend or terminate the exclusivity periods provided in § 1121, cases outside of this jurisdiction were instructional. *See In re Situation Mgmt Sys., Inc.*, 252 B.R. 859 (Bankr. D. Mass. 2000) (holding that the new value provision included in debtor's proposed plan constituted cause to terminate exclusivity); *In re Express One Int'l., Inc.*, 194 BR 98 (Bankr. E.D. Tx. 1996) (enumerating four factors courts have considered relevant in determining if cause exists to terminate exclusivity); *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418 (Bankr. W.D. Mich. 1992) (applying the "obstacle to successful reorganization test" to determine whether to shorten the initial 180 day exclusivity period for a debtor to obtain acceptances). Therefore, the Court found whether cause exists is a factual determination that must be considered on a case by case basis.

In *Fountain Powerboat*, the Court found the nine factors set forth in *In re Express One International, Inc.*, 194 BR 98 (Bankr. E.D. Tx. 1996), "should be considered as part of its analysis of whether cause exists to terminate the Debtors' exclusivity." *Fountain Powerboat*, 2009 WL 4738202 at *3. The Court considers each factor separately.

    1. <u>Size and complexity of the case</u>. The Debtor's case is designated as a Single Asset Real Estate case as defined by 11 U.S.C. § 101(51B). ERGS claims that the case is a simple case with a non-operating Debtor. ERGS is the largest secured creditor with a claim in the amount of $39,236,631.03 secured by collateral valued in excess of $38,000,000.00. While the case may involve a overwhelmingly large creditor secured by a real property, there are three additional secured claims, including one of an insider or related entity, and approximately seventy unsecured claims.

Further, ERGS' claim and the Debtor's attempted reorganization have been rife with litigation. The Debtor objected to ERGS' claim and the Court determined ERGS' claim to be a secured claim in the amount of $38,390,000.00 and an unsecured claim in the amount of $673,661.91.[3] ERGS filed the Motion of ERGS II, L.L.C. to Determine Classification of Claims, asserting the Debtor improperly classified the unsecured claims in its case. This motion was denied on August 8, 2012.[4] ERGS also filed an objection to the Debtor's Disclosure Statement. Finally, the Debtor has filed the Motion to Designate the Votes of ERGS II, L.L.C. as Submitted in Bad Faith Pursuant to 11 U.S.C. § 1126(e). Further, the Debtor and ERGS participated in a mediated settlement conference regarding ERGS' claim. The mediator appointed declared an impasse in his report dated August 8, 2012. Based on the preceding matters requiring the Court's attention, the Court finds this case is sufficiently complex as the litigation imposes impediments and delays for the Debtor as it attempts to proceed to confirmation.

While this case may not be particularly large or complex in comparison to other districts across the country, when compared to the typical Chapter 11 proceeding in the Eastern District of North Carolina, the matter involves substantial amounts of money and significant creditors. This, combined with the numerous litigated issues raised by the Debtor and ERGS, causes the Court to find this factor favors the Debtor's request for extension of time.

2. <u>Necessity of sufficient time to permit debtor to negotiate plan</u>. The Debtor filed the Chapter 11 petition on February 2, 2012. Less than two months later the Debtor filed the Plan and

---

[3] ERGS filed a Notice of Appeal on August 16, 2012, appealing the Order Sustaining Debtor's Objection to Proof of Claim of ERGS II, L.L.C. to the United States District Court.

[4] ERGS filed a Notice of Appeal on August 16, 2012, appealing the Court's Order Denying the Motion to Determine Classification of Claims to the United States District Court.

Disclosure Statement. The Debtor re-filed the Plan and Disclosure Statement, and then filed an Amended Plan and Amended Disclosure Statement on July 19, 2012. In that time, the Debtor and ERGS participated in a mediated settlement conference that resulted in impasse.[5] Furthermore, ERGS filed several motions directly affecting the Debtor's ability to negotiate the plan. For instance ERGS filed a motion to determine classification of claims in the unsecured class and objected to the Disclosure Statement filed on April 11, 2012, both of which required attention before the Debtor could proceed with negotiations. Based on these events, the Debtor has made significant steps in negotiating and bringing a plan to confirmation in the approximately six months since the Debtor filed the petition.

Courts considering this factor allowed extensions of the exclusivity periods in situations where a debtor had periods from six months to two years to negotiate a plan. *See Fountain Powerboat*, 2009 WL 4738202 (denying creditor's motion to terminate exclusivity when the debtor had approximately six months to negotiate its plan); *In re Dow Corning Corp.*, 208 B.R. 661 (Bankr.E.D. Mich. 1997) (denying unsecured creditors' committee's motion to terminate exclusivity where the debtor had over two years to negotiate its plan). In light of the relatively short periods of exclusivity already elapsed, the Court finds this factor weighs in favor of the Debtor's continued exclusivity in negotiating the Amended Plan.

      3. <u>Existence of good faith progress toward reorganization</u>. The Debtor asserts it is making good faith progress toward reorganization for a number of reasons. First, the Debtor contends it filed a plan on March 26, 2012, and re-filed the plan on April 11, 2012, both well before the deadline of

---

[5]The Debtor represented that its amended plan included new provisions more in liking to ERGS as a result of the progress made at mediation.

May 2, 2012 set by the Court. Additionally, the Debtor asserts it has increased revenues and has continued success through operation by entering into two additional leases. Finally, the Debtor states it has managed to propose an Amended Plan, all while meeting ERGS' discovery requests, participating in a deposition, answering ERGS' questions about the Property, and attending a mediation.

ERGS argues that the Debtor has not proposed a plan that is confirmable as a matter of law and is not making good faith progress toward reorganization. ERGS asserts that the Debtor's Amended Plan does not comply with the absolute priority rule under 11 U.S.C. § 1129(b)(2)(B)(ii) and as such, the Amended Plan cannot be confirmed as a matter of law.[6]

However, the Debtor filed the Motion to Designate the Votes of ERGS II, L.L.C. as Submitted in Bad Faith Pursuant to 11 U.S.C. § 1126(e) on August 10, 2012. One of the Debtor's arguments in that motion is that ERGS' unsecured deficiency claim should be reduced based on adequate protection payments made by the Debtor. Should the Debtor prevail on this argument, ERGS may no longer have a claim in the unsecured class and the possibility exists that the Amended Plan will comply with the absolute priority rule, depending on the results of balloting.

Furthermore, the possibility that the Debtor's Amended Plan may not be confirmable is not a deciding factor in the good faith analysis. The Court has seen many instances where a particular plan was not confirmable in the minutes leading up to the confirmation hearing only to have the parties reach an agreement resulting in a viable plan. Evidence that the Debtor's Amended Plan is

---

[6]ERGS filed the Disclosure Statement and Plan, on July 26, 2012 and July 27, 2012, respectively, for which it would solicit acceptances if exclusivity were terminated. Filing the Plan and Disclosure Statement without the Court's blessing, prior to exclusivity being terminated, may raise questions of good faith on the part of ERGS, when exclusivity had not expired.

not confirmable at this point in time is insufficient to show the Debtor has not made good faith progress toward reorganization. Accordingly, the Court finds this factor favors the Debtor.

    4. <u>Debtor paying its bills as they become due.</u>  While neither party disputes that the Debtor is paying its monthly expenses as they become due, ERGS asserts the operating expenses are paid only by the use of ERGS' cash collateral. In addition to paying its monthly operating expenses, the Debtor has been making monthly adequate protection payments to ERGS of approximately $160,000.00 each month. The Court finds the Debtor generates sufficient income to pay its expenses as they become due. However, the Debtor's current operating expenses may make it difficult to propose commercially reasonable terms in restructuring the obligation to ERGS. As such, this factor falls slightly in favor of the Debtor.

    5. <u>Reasonable prospects for filing a viable plan.</u>  The Debtor's Amended Plan was set for confirmation hearing on September 17, 2012. At the hearing on the Motion, the confirmation hearing was moved to November 7, 2012 to allow the parties to complete discovery prior to confirmation. ERGS indicates it will reject the Amended Plan as proposed. ERGS also asserts the Debtor's Amended Plan is not viable because as proposed, the Amended Plan does not comply with the absolute priority rule pursuant to 11 U.S.C. § 1129(b)(2)(B)(ii). ERGS states the Debtor proposes to retain property without paying the holder of each unsecured claim the value of such claim as of the effective date of the Amended Plan as required by § 1129(b)(2)(B)(ii). As discussed in the good faith analysis, it is impossible to be certain the Amended Plan will not comply with the absolute priority rule at this juncture.

    Furthermore, the Amended Plan proposes to pay the general unsecured class in full within sixty-three months of the effective date. ERGS argues the structure of these deferred payments does

not comply with the language of § 1129(b)(2)(B)(i), which requires that each unsecured claim receive "value, as of the effective date of the plan, equal to the allowed amount of such claim." 11 U.S.C. § 1129(b)(2)(B)(i). However, it is well established that if "payments to the unsecured creditors are deferred over time, an appropriate . . . rate of interest, must be afforded in order to compensate for the time value of money and pay the claimants the full value of their claims." *In re Schriock Constr., Inc.*, 167 B.R. 569, 578 (Bankr. D.N.D. 1994); *see also In re Cornwall Personal Ins. Agency, Inc.*, 308 B.R. 771, 774 (Bankr. N.D. Tex. 2003); *In re Ribs Auto Sales, Inc.*, 140 B.R. 390, 394 (Bankr. E.D. Va. 1992). Therefore, as the Amended Plan proposes deferred payment in full to the unsecured class, the Debtor could propose treatment that complies with 11 U.S.C. § 1129(b)(2)(B)(i) by proposing an interest rate that accounts for the time value of money.

The Court is concerned with the treatment of ERGS and whether the terms proposed in the Amended Plan are commercially reasonable. However, the Court believes that with further scaling back on expenses, the Debtor could propose or negotiate more reasonable terms.

This factor does not lean favorably toward the Debtor. However, the Amended Plan is not conclusively non-confirmable as ERGS suggests. Therefore, this factor is a draw.

6. <u>Progress in negotiations.</u> The Debtor and ERGS have made attempts to negotiate and have attended a mediated settlement conference. The mediation ended in impasse. At the hearing, counsel for the Debtor made it clear that the negotiations with ERGS had stalled. Based on the competing plan filed by ERGS, it would appear the only plan ERGS might accept is one surrendering the collateral securing its claim. However, despite the contentions between the Debtor and ERGS, the Court believes additional time would be fruitful in allowing the Debtor to reevaluate its operating expenses and propose treatment that is commercially reasonable. Furthermore, pending the outcome

of the Debtor's Motion to Designate the Votes of ERGS II, L.L.C. as Submitted in Bad Faith Pursuant to 11 U.S.C. § 1126(e), the composition of the unsecured class may change dramatically. Additionally, this Court denied a creditor's motion to terminate the exclusivity period despite acknowledging negotiations "would appear to be impossible and, quite possibly, fruitless based on the representations of the parties." *Fountain Powerboat*, 2009 WL 4738202 at *5. Therefore, the Court finds additional time to negotiate will serve both the Debtor and creditors, especially in light of ERGS' intent to solicit a competing plan after the exclusivity periods expire, if not further extended.

7. <u>Amount of time elapsed in the case.</u>  The Debtor has made serious attempts to propose a plan of reorganization expeditiously. The Debtor filed the first plan only fifty-three days after the date of the petition. Only sixteen days later, the Debtor re-filed the plan, just sixty-nine days after the date of the petition. The Debtor filed the Amended Plan and Disclosure Statement on July 19, 2012, after the mediation occurred and the Court heard ERGS' objection to the Debtor's previously filed disclosure statement. As of the date of the hearing, approximately six months have passed from the filing of the Chapter 11 petition. This is the Debtor's first request for an extension of time.

Additionally, the Court finds several of the delays to date have been on the motion of or at the request of ERGS. For instance, ERGS filed an objection to the Debtor's disclosure statement on May 4, 2012. ERGS also filed a motion for temporary allowance of its claim pursuant to Federal Rule of Bankruptcy Procedure 3018(a), which was heard on the same day as the Debtor's objection to ERGS' claim.

Based on the steps taken toward reorganization and the numerous matters brought before the Court, as discussed under factor one, the Court finds the amount of time elapsed in the Debtor's case is not unreasonable. Therefore, this factor weighs in favor of the Debtor.

8. <u>Whether the debtor is seeking an extension in order to pressure creditors to submit to the debtor's reorganization plans</u>. There is no evidence that the Debtor seeks the extension of time in order to pressure creditors to submit to the Debtor's reorganization plans. It does not appear to the Court that the Debtor has previously engaged in "stall tactics" or that the extension is sought in bad faith. Therefore, the Court finds this factor in favor of the Debtor.

9. <u>Unresolved contingency exists.</u> Both parties are in agreement that no unresolved contingency exists. However, the Court notes that the Debtor's Motion to Designate the Votes of ERGS II, L.L.C. as Submitted in Bad Faith Pursuant to 11 U.S.C. § 1126(e) is pending, the outcome of which may have bearing on the acceptance or rejection of the Amended Plan. Additionally, ERGS filed a notice of appeal from the Order Sustaining Debtor's Objection to Proof of Claim of ERGS II, L.L.C. and the Order Denying Motion to Determine Classification of Claims, both entered by this Court on August 8, 2012. While an appeal to the United States District Court is a lengthy process, the outcome of the appeals could have bearing on treatment of claims under a plan of reorganization. Thus, this factor favors extension.

In addition to these nine factors, *Fountain Powerboat* considered additional factors cited by other courts as constituting cause to deny extension of the exclusivity periods. In *Fountain Powerboat*, this Court considered "whether a creditor's loss of confidence in a debtor's management" should be considered in determining whether cause exists to modify the exclusivity periods. *Fountain Powerboat*, 2009 WL 4738202 at *6 (citing *In re Matter of All Seasons Indus.,*

*Inc.*, 121 B.R. 1002 (Bankr. N.D. Ind. 1990)). In *Fountain Powerboat*, the Court determined that the creditor's opinion of the debtor's management was not a factor in that case as the facts suggested the creditor exhibited confidence in the Debtor's management. In the present case, ERGS has not argued lack of confidence in the Debtor's management, but it has indicated the Debtor's operating costs significantly hinder the Debtor's ability to propose commercially reasonable terms in reorganization. The Court too shares this concern, but notes that steps have been taken to reduce operating costs in the Debtor's cash collateral budget, such as abiding by the Court's order to reduce the management fee for the Debtor's office buildings to twelve percent of the gross monthly rental income received.

*Fountain Powerboat* also instructs that courts have found additional factors to be "major obstacles of successful reorganization." *Fountain Powerboat*, 2009 WL 4738202 at *6 (quoting *Grand Traverse*, 147 B.R. at 420 (Bankr. W.D. Mich. 1992)). These factors include the gross mismanagement of the debtor and acrimonious feuding between the debtor's principals. *Id*. As previously stated, the Court finds ERGS has voiced no concerns regarding its confidence in the Debtor's management. However, ERGS does point out that insiders and other affiliates of the Debtor have routinely received transfers of significant amounts of money and that the Debtor holds uncollected promissory notes executed for the benefit of the same parties. The Court notes ERGS has yet to provide evidence supporting these claims. At the present time, the Court finds no verifiable allegations of gross mismanagement on the part of the Debtor.

Additionally, neither the Debtor nor ERGS allege acrimonious feuding between the Debtor's principals. As noted in *Fountain Powerboat*, "the principals of the Debtor[] do not seem to disagree amongst themselves but instead, it is the secured creditor's aggressive litigation position that appears

14

to be in direct conflict with the Debtors proposed plan [sic]." *Fountain Powerboat*, 2009 WL 4738202 at *6 (citing *Grand Traverse*, 147 B.R. at 419). Such conflict does not constitute cause to deny extension of the exclusivity periods as to do so "would permit litigious creditors to manufacture 'cause' to shorten the exclusivity period through their own unilateral actions." *Id.* (quoting *Grand Traverse* 147 B.R. at 421).

Finally, the Court maintains the position that considering termination of an exclusivity period "is a serious matter" and termination "should be granted neither routinely nor cavalierly." *Fountain Powerboat*, 2009 WL 4738202 at *6 (quoting *In re McLean Indus. Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987)). In the almost three years since the Court entered the order denying termination of exclusivity in *Fountain Powerboat*, the Court finds no additional published cases where the exclusivity period was terminated for cause. In the two cases the Court referred to in *Fountain Powerboat* where courts reduced the initial exclusivity periods of 120 and 180 days, the court in each case found an acrimonious relationship between the debtor's principals. *See In re Crescent Beach Inn, Inc.*, 22 B.R. 155, 161 (Bankr. D. Me. 1982) (finding that since the 180 day period would expire one week after Labor Day, the final week of the summer season for the debtor, and the acrimonious relationship of the principals, shortening the exclusivity period to allow any parties in interest to file a plan was an appropriate measure); *Pickens Indus., Inc. v. Palmer, Palmer and Coffee (In re Texas Extrusion Corp.)*, 68 B.R. 712 (N. D. Tex. 1986), *aff'd* 844 F.2d 1142 (5th Cir. 1988) (finding that reduction of time for the debtor to file a plan was appropriate where there were acrimonious relations between the parties). The additional cases the Court located since *Fountain Powerboats* was decided, deny extension of the exclusivity periods because the debtor failed to convince the court that a plan would be confirmed within a reasonable amount of time or failed to meet the burden of

establishing good cause to grant an extension. *See In re Darby Gen. Contracting, Inc.*, 410 B.R. 136 (Bankr. E.D.N.Y. 2009) (denying extension of the exclusivity periods after finding the debtor failed to act with the level of diligence required in a small business case); *In re R.G. Pharmacy, Inc.*, 374 B.R. 484 (Bankr. D. Conn. 2007) (finding evidence of a pending adversary proceeding was insufficient to establish cause to extend the exclusivity periods). These cases are distinguishable in that the Debtor is not a small business case and the Debtor does not cite a pending adversary proceeding as cause to extend the exclusivity periods.

In the ERGS Motion, ERGS contends the factors suggest there is cause for the Court to terminate the exclusivity periods, primarily based on the Debtor's failure to propose a viable and feasible plan. As previously analyzed, the Court is not convinced there is not some formulation of a plan the Debtor could propose that would comply with 11 U.S.C. § 1129. Additionally, the outcome of pending motions may influence the remaining claims and change the composition of the unsecured class. Terminating the exclusivity periods and allowing ERGS to file a competing plan would not allow the Debtor to account for these circumstances in any plan already filed.

Furthermore, the Court finds that "[a] competing plan at this point could be fatal to any reorganization efforts by the Debtor[]." *Fountain Powerboat*, 2009 WL 4738202 at *7. In the competing plan filed by ERGS, ERGS proposes that the Debtor surrender possession of the collateral securing ERGS' claim. Should all other creditors choose to accept ERGS' competing plan over the Debtor's proposed plan, there will be no ability for the Debtor to reorganize whatsoever. The Debtor derives substantially all of its income by renting ERGS' collateral. If the Debtor were to surrender the collateral to ERGS, there would be no remaining income to fund a plan of reorganization or allow the Debtor to continue operations. As such, the Court finds the Debtor "should have [a]

chance to reorganize in a way that management believes will be in the best interest of the Debtor[], its estate[], the community, and the creditors." *Id*. at *8.

The Court finds ERGS' interests are presently protected as ERGS continues to receive adequate protection payments from the Debtor as required by the cash collateral order entered by the Court. Further, the cash collateral order significantly limits the fees the Debtor may pay to related entities for management of the rental property that serves as ERGS' collateral to twelve percent of the Debtor's gross monthly rental income. Through these provisions, ERGS is receiving some payment and the Debtor still lives up to the expectations of its tenants, ensuring their continued occupancy. As such, the interests of the parties involved have some level of protection during the exclusivity period.

Therefore, based on the reasons set forth above and consideration of the factors set forth above, the Debtor has established there is sufficient cause to extend the exclusivity periods set forth in Section 1121(d). The Motion is **GRANTED**. The Debtor shall have until November 15, 2012 to exclusively solicit favorable ballots for its Amended Plan. Accordingly, the ERGS Motion is **DENIED**.

**SO ORDERED**.

**END OF DOCUMENT**