**SO ORDERED.**

**SIGNED this 18 day of December, 2012.**

_____

**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

**IN RE:**

**LICHTIN/WADE, LLC,**                         **CHAPTER 11**
                                               **CASE NO. 12-00845-8-RDD**
**DEBTOR**

### ORDER GRANTING MOTION OF ERGS II, LLC
### TO DESIGNATE VOTES OF AVIATION MANAGEMENT GROUP, INC.
### PURSUANT TO 11 U.S.C.§§ 1126(e) AND 1129(a)(10)

Pending before the Court is the Motion of ERGS II, LLC to Designate Votes of Aviation

Management Group, Inc. Pursuant to 11 U.S.C. §§ 1126(e) and 1129(a)(10) (the "Motion") filed by

ERGS II, L.L.C. ("ERGS") on August 23, 2012 and the Response to Motion of ERGS II, L.L.C. to

Designate Votes of Aviation Management Group, Inc. Pursuant to 11 U.S.C. § 1126(e) and

1129(a)(10) (the "Objection") filed by Lichtin/Wade, LLC (the "Debtor") on September 25, 2012.

The Court conducted a hearing on this matter on November 15, 2012 in Wilson, North Carolina.

### BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on

February 2, 2012.  The Debtor owns two office buildings located in Raleigh, North Carolina and

operates as a debtor-in-possession.  First Amended Disclosure Statement at 7, *In re Lichtin/Wade,*

*LLC*, No. 12-00845-8-RDD (Bankr. E.D.N.C. July 19, 2012). The two office buildings are Class A

office buildings. *Id.* "Each building has approximately 100,000 square feet of rentable space. Each building is approximately 90% leased." *Id.* In addition, the Debtor owns vacant land consisting of approximately twelve acres which is approved for three additional office buildings. *Id.* Prior to the date of filing, the Debtor and Branch Banking and Trust Company ("BB&T") entered into four promissory notes (the "Secured Notes"),[1] secured by all of the Debtor's real property, assignment of rents, and certain of the Debtor's personal property. The four Secured Notes matured on December 15, 2011.

On March 27, 2012, BB&T entered into an agreement with ERGS, whereby ERGS purchased from BB&T all of its rights, title, and interests in and to the Secured Notes. On May 2, 2012, ERGS filed Proof of Claim No.10 in the secured amount of $39,236,631.03 representing principal, interest, and fees. On May 29, 2012, the Debtor filed the Objection to Claim, objecting to ERGS's Proof of Claim. On August 8, 2012, the Court entered an order determining that ERGS's claim was to be treated as a secured claim in the amount of $38,390,000.00, and an unsecured claim in the amount of $673,661.91.

On April 24, 2012, the Debtor and ERGS entered into a stipulation agreement agreeing and stipulating that the real property owned by the Debtor securing ERGS's claim shall be valued at $38,390,000.00.

---

[1]

|        | Dated              | Original Principal Amount |
|--------|--------------------|---------------------------|
| Note 2 | May 3, 2007        | $15,035,000.00            |
| Note 3 | August 31, 2007    | $5,665,512.00             |
| Note 4 | August 31, 2007    | $16,800,000.00            |
| Note 7 | September 13, 2011 | $1,950,000.00             |

On May 20, 2012, Aviation Management Group, Inc. ("AMG") acquired the claims of Caterpillar Financial Services Corporation ("Caterpillar Financial"). On June 28, 2012 AMG filed Proof of Claim No. 19-1 ("POC 19") in the amount of $11,601.10.  POC 19 states it is based on a note/transfer of claim and the amount of secured claim is $7,569.44 and is accruing interest at an annual rate of 8%. The claim is based on two equipment leases of two back-up generators located in each of the Debtor's two office building. This Court has previously ruled that the equipment leases are in fact disguised security interests.  *In re Lichtin/Wade, LLC*, Case No. 12-00845-8-RDD at 7 (Bankr. E.D.N.C. Aug. 8, 2012).

Class 3 of the Second Amended Plan (the "Plan") is comprised of the claims of AMG.  The Debtor's Plan proposes to treat the claims as secured claims amortized over three (3) years with interest at 5%. Payments are to begin on the 15th day of the first full month following the Effective Date of the Plan.  The Debtor asserts that this class is impaired. The Supplement to Disclosure Statement filed on October 15, 2012, shows AMG will receive a total of $1,798.80 in 2013, $1,798.80 in 2014 and $1,349.10 in 2015.

ERGS contends that AMG purchased the Caterpillar claims in bad faith at the direction of Harold Lichtin, principal of the Debtor, for the purpose of creating an artificially impaired class. Further, ERGS contends that the claims of AMG should be classified as insider claims for purposes of 11 U.S.C. § 1129(a)(10) of the Bankruptcy Code. The Debtor responds that AMG is not an alter ego of the Debtor, nor is it in any way controlled by the Debtor. Further the Debtor responds that the Debtor's and AMG's actions do not give rise to the kind of bad faith contemplated by 11 U.S.C. § 1126(e).

The Court finds that AMG is an insider of the Debtor pursuant to 11 U.S.C. § 1129(a)(10). Therefore the ballot of AMG will not be recognized for voting purposes.[2]

## DISCUSSION

Section 1129(a)(1) provides that a court shall confirm a debtor's plan of reorganization only if the plan complies with the applicable provisions of this title. 11 U.S.C. § 1129(a)(1). Section 1129(a)(10) requires that at least one impaired class vote to accept the plan without regard to the vote of any insider. Although the Debtor argues that AMG is an impaired class, a closer look at the class reveals that AMG is in fact an insider.

The term "insider," as it relates to corporate debtors, is defined in § 101(31)(B) of the Bankruptcy Code:

> (31) The term "insider" includes-
>> (B) if the debtor is a corporation-
>>> (i) director of the debtor;
>>> (ii) officer of the debtor;
>>> (iii) person in control of the debtor;
>>> (iv) partnership in which the debtor is a general partner;
>>> (v) general partner of the debtor; or
>>> (vi) relative of a general partner, director, officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B).

Determining whether an entity is an insider is a question of fact, which must be determined on a case-by-case basis. *See In re Broumas*, Nos. 97-1183 & 97-1182, 1998 WL 77842, at *7 (4th Cir. 1998) (citing *Browning Interests v. Allison*, 955 F.2d 1008, 1011 (5th Cir. 1992)). Excluding

---

[2]The Court notes that according to the summary of ballots filed by the Debtor on October 24, 2012 AMG did not file a ballot. In the Second Amended Plan filed on October 15, 2012, the Debtor notes that the AMG class is impaired and is entitled to vote, however, there is a pending objection to the claim which will determine the ability of AMG to vote on the claim once it is resolved.

4

insiders from impaired classes who vote on the reorganization plan stems primarily from the desire to protect the interests of other creditors. *In re Gilbert*, 104 B.R. 206, 210 (Bankr. W.D. Mo. 1989). The concern is to "forestall the voting of a creditor who is so beholden to or controlled by the debtor as to in effect be an alter ego of the debtor." *Id.* at 210.

The definition of insider is "illustrative rather than exhaustive." *Longview Aluminum, L.L.C. v. Brandt*, 431 B.R. 193, 196 (N.D. Ill. 2010) (citing *In re Krehl*, 86 F.3d 737, 741-42 (7th Cir. 1996)). Section 101(31)(B) uses the word "includes." The use of such a term does not connote that the examples listed are exclusive. Courts have held that "in addition to the individuals and entities actually named, the term also encompasses anyone with 'a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor.'" *Id.* (citing *In re Krehl*, 86 F.3d 737, 741-42 (7th Cir. 1996)). "[I]nsider analysis invites the Court to consider whether the disputed relationship is similar to or bears characteristics of any of the relationships specified in the statute." *In re Gilbert*, 104 B.R. at 210 (citing *In re Henderson*, 96 B.R. 820, 825 (Bankr. E.D. Tenn. 1989)). The determination of insider status focuses on two factors: "(1) the closeness of the relationship between parties; and (2) whether the transaction in question was arm's length." *Angell v. First Eastern, LLC* (*In re Caremerica, Inc.*), Ap. No. 08-00157-8-JRL, at 8 (citing *Schubert v. Lucent Tech. Inc.* (*In re Winstar Commc'n*) 554 F.3d 382, 396 (3rd Cir. 2009)).

In this case, the Debtor is a limited liability company as opposed to a corporation. Courts have held that the Bankruptcy Code's definition of "corporation" as defined in § 101(9) includes the

limited liability company.[3]  "[L]imited liability companies and similar entities . . . fall under the definition of a corporation in the Bankruptcy Code § 101."  *See* Fed R. Bankr. P. 7007.1 Advisory Committee Note (2009).

On July 10, 2012, ERGS deposed William Graef, the president of AMG.  At the hearing on November 15, 2012, portions of Mr. Graef's deposition testimony were read into the record. AMG provides management and consulting expertise for the operation of private aircraft owned by individuals and companies. William Graef Deposition, p. 10. AMG provides services to Lichtin Corporation, the manager of the Debtor, which is solely owned and controlled by Harold S. Lichtin. *Id.* at p. 12. Mr. Lichtin owns an aircraft and AMG has provided services to Mr. Lichtin since 1998. *Id.* at p. 11. Lichtin Corporation is billed annually in the approximate amount of $400,000.00 for AMG's services. *Id.* at p. 13. Mr. Graef personally pilots Mr. Lichtin's plane. *Id.* at p. 14.  In addition to piloting, AMG provides support services for the aircraft, including maintenance services, cleaning services and scheduling services for Mr. Lichtin's trips. *Id.* at p. 15.  Within the last eighteen (18) months, Lichtin Corporation has not paid AMG on a timely basis and currently owes AMG $200,000.00. *Id.* at 46. AMG, however, continues to provide services to Lichtin Corporation. *Id.* at 48.

---

[3]A limited liability company ("LLC") "is owned by members who have the same protection from liability as shareholders of a corporation.  Thus, although the members of an LLC are in some respects similar to partners in a partnership, they are not general partners.  Even if they were partners, their protection from liability would render the entity the type of partnership association falling within subsection (A)(ii), thus making the limited liability company fall within the Code's definition of "corporation." 2 COLLIER ON BANKRUPTCY ¶ 101.09 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. 2009) (citing *Broyhill v. DeLuca*, 194 B.R. 65, 74 (Bankr. E.D. Va. 1996); *In re ICLNS Notes Acquisition, L.L.C.*, 259 B.R. 289 (Bankr. N.D. Ohio 2001)).

AMG has never purchased a claim in a bankruptcy proceeding prior to purchasing the Caterpillar claims in the Debtor's case. *Id.* at p. 18. Mr. Graef testified that Mr. Lichtin called him regarding the Caterpillar claims in early May of 2012. *Id.* at 25. Mr. Graef testified that Mr. Lichtin inquired as to whether Mr. Graef would be willing to purchase the Caterpillar claims. *Id.* at 28. Mr. Graef testified that he understood that if he purchased the claims, AMG would have the opportunity to cast a vote in favor of the Plan. *Id.* at 29. AMG purchased the claims one day prior to the ballot due date so that AMG as a secured creditor could cast a vote in favor of the plan. *Id.* at 36-37. Mr. Graef testified that he did not have any hesitation in purchasing the claims because Mr. Lichtin was a friend. *Id.* at 30. Further, Mr. Graef did not review any documents, leases or bankruptcy filings prior to deciding to purchase the Caterpillar claims. *Id.* at 31. Mr. Graef testified that he cast a ballot accepting the Chapter 11 Plan of Reorganization without ever reading the terms of the plan because he had confidence in Mr. Lichtin as a businessman. *Id.* at 37-38. Mr. Graeff was not aware that the plan proposed to stretch out the debt owed to Caterpillar and pay it over five (5) years at $200.00 per month. *Id.* at 38. Mr. Graef testified that he did not have a business justification for purchasing the Caterpillar claims but was doing this strictly to help Mr. Lichtin. *Id.* at 45. Mr. Graef testified that AMG has roughly 120 clients and that Lichtin Corporation is one its top 15 larger clients. *Id.* at 53-54.

ERGS contends that AMG is a nonstatutory insider based on Mr. Graef's personal relationship with Mr. Lichtin developed over a fourteen-year business relationship. The Court agrees, and finds that AMG is a nonstatutory insider. Based on Mr. Graeff's testimony it is clear AMG purchased the Caterpillar claims for the sole purpose of helping out Mr. Lichtin. He testified that after Mr. Lichtin called him and requested that AMG purchase the claims, it purchased the

claims without ever reviewing any documentation or the plan treatment of the claims. AMG did not purchase the claims based on any independent business judgment, but because of Mr. Graef's friendship with Mr. Lichtin.  AMG has been providing services to Lichtin Corporation since 2008 and Lichtin Corporation is one of AMG's largest clients. The Court finds that AMG's relationship with the Debtor was sufficiently close and personal so as not to rise to an arm's length business transaction with the Debtor.

## CONCLUSION

Based on the foregoing, the Court finds that AMG is a nonstatutory insider and AMG's claims will not be considered in the Section 1126(c) ballot computation. ERGS's Motion is **GRANTED**.

**SO ORDERED**.

**END OF DOCUMENT**