**SO ORDERED.**

**SIGNED this 07 day of February, 2013.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

LICHTIN/WADE, L.L.C.,                    CHAPTER 11
                                          CASE NO. 12-00845-8-RDD

   DEBTOR

### ORDER DENYING MOTION OF ERGS II, L.L.C.
### REGARDING TABULATION OF ITS UNSECURED CLASS 7 BALLOT

Pending before the Court is the Motion of ERGS II, L.L.C. Regarding Tabulation of its Unsecured Class 7 Ballot (the "Motion") filed by ERGS II, L.L.C. ("ERGS") on September 21, 2012 and the Debtor's Response to Motion of ERGS II, L.L.C. Regarding the Tabulation of its Unsecured Class 7 Ballot (the "Response") filed by Lichtin/Wade, L.L.C. (the "Debtor") on October 15, 2012. The Court conducted a hearing on the Motion and Response in Wilson, North Carolina on December 20, 2012.

## BACKGROUND

The Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on February 2, 2012.  The Debtor owns two office buildings known as Wade I and Wade II, plus approximately twelve (12) acres of vacant land upon which three (3) additional office buildings may be constructed, referred to as Wade III, Wade IV, and Wade V

(the "Property").  On the petition date, the Property was encumbered by several deeds of trust and corresponding assignments of rent held by Branch Banking & Trust Company ("BB&T"), securing four (4) promissory notes with unpaid principal and interest totaling $39,052,661.91.  On March 27, 2012, BB&T sold the underlying indebtedness to ERGS.  The Debtor and ERGS filed a stipulation for the purposes of confirmation of the Debtor's Plan of Reorganization that the Property should be valued at $38,390,000.00 on April 24, 2012.  ERGS filed proof of claim, Claim No.10, in the amount of $39,236,631.03 on May 2, 2012.  The Debtor filed an objection to ERGS's proof of claim on May 29, 2012 because in the claim, ERGS sought to recover interest at the default rate under the promissory notes for periods prior to the declaration of default on the notes.  In the Order Sustaining Debtor's Objection to Proof of Claim of ERGS II, L.L.C., entered on August 8, 2012, the Court sustained the Debtor's objection to ERGS's proof of claim, finding ERGS is allowed a secured claim in the amount of $38,390,000.00 and an unsecured claim in the amount of $673,661.91 (the "Claim Allowance Order").  *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, 2012 WL 3260287 (Bankr. E.D.N.C. Aug. 8, 2012).  ERGS filed a notice of appeal of the Claim Allowance Order to the District Court for the Eastern District of North Carolina on August 16, 2012.

Shortly after the petition date, the Debtor filed an emergency motion to use cash collateral pursuant to 11 U.S.C. § 363.  On February 24, 2012, the Court entered the Interim Order Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and Turnover of Certain Rental Proceeds, which allowed the Debtor to use rental payments that constituted cash collateral of ERGS's predecessor, BB&T, according to a set budget.[1]  The order required "the Debtor [] pay to

---

[1] The first interim order, and subsequent orders, authorized the Debtor to use the cash collateral for "post-petition reasonable, necessary costs and expenses of preserving the Property . . . ." *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, at 6 (Bankr. E.D.N.C. Feb. 24, 2012).

BB&T $50,000.00 as adequate protection" on or before February 28, 2012. *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, at 6 (Bankr. E.D.N.C. Feb. 24, 2012). The Second Interim Order Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363, entered on March 13, 2012, required the Debtor to pay "BB&T $153,244.33 as adequate protection." *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, at 7 (Bankr. E.D.N.C. Mar. 13, 2012). The Third Interim Order Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363, entered on April 17, 2012, required the Debtor to pay "ERGS $159,958.33 as adequate protection." *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, at 7 (Bankr. E.D.N.C. Apr. 17, 2012). The Final Order (A) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (B) Granting Adequate Protection Pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, entered on May 18, 2012, required the Debtor to pay "ERGS $5,344.054 [sic] per day multiplied by the number of days in the preceding month" as adequate protection by the fifteenth day of each month. *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, at 11 (Bankr. E.D.N.C. May 18, 2012). As of the date ERGS filed the Motion, the Debtor made payments of approximately $1,195,497.59. In the Response, the Debtor indicates it made the following payments:

| Adequate Protection Payments | |
|---|---|
| February 2012 | $50,000.00 |
| March 2012 | $153,244.33 |
| April 2012 | $159,958.32 |
| May 2012 | $160,321.20 |
| June 2012 | $160,321.20 |
| July 2012 | $165,665.67 |
| August 2012 | $175,665.67 |

3

| September 2012 | $170,321.20 |
| October 2012 | $175,665.67 |
| Total Adequate Protection Payments | $1,371,163.26 |

The Debtor filed the Plan of Reorganization and Disclosure Statement on March 26, 2012 but withdrew the filings on April 11, 2012. Subsequently, the Debtor filed a new Chapter 11 Plan of Reorganization and Disclosure Statement on April 11, 2012.[2] The Disclosure Statement contains the following language in reference to the treatment of the claim of ERGS:

> ERGS II, LLC – This Class is treated as secured up to $38,390,000.00, the value of the collateral securing its claims. The Debtor believes that the adequate protection payments it has made and will make prior to the Effective Date of the Plan will eliminate any deficiency claim; however, any deficiency claim which is determined to exist will be treated as an unsecured claim.

Disclosure Statement 5. In the First Amended Disclosure Statement filed by the Debtor on July 19, 2012, the Debtor includes the following language in reference to the treatment of ERGS's claim:

> ERGS II, LLC – This Class is treated as secured up to $38,390,000.00, the value of the collateral securing its claims. This Claim will be paid in full over a period of five years from the Effective Date, with monthly interest only payments at the rate of 4.75% per annum, a monthly payment of $10,000.00 towards principal, and a yearly cash flow based payment to be applied towards principal. The Debtor will also fund the Escrow Accounts. The Debtor believes that the adequate protection payments it has made and will make prior to the Effective Date of the Plan will eliminate any deficiency claim; however, any deficiency claim that is determined to exist will be treated as an unsecured claim. ERGS will be entitled to post-petition interest and attorney's fees as permitted by Section 506(b) of the Code up to $38,390,000.00, to ensure that it receives an Allowed Secured Claim of the value of its collateral as of the Effective Date of the Plan.

---

[2] The Debtor filed the First Amended Plan of Reorganization and the First Amended Disclosure Statement on July 19, 2012 and the Second Amended Plan of Reorganization on October 15, 2012. The confirmation hearing is scheduled for March 27, 2013.

First Am. Disclosure Statement 14.[3]

ERGS asserts that by including this language in the disclosure statements, the Debtor "suggests that post-petition adequate protection payments . . . should be applied to reduce the deficiency claim held by ERGS." Mot. 5-6. In the Motion, ERGS argues the Court no longer has jurisdiction to hear issues related to the amount of ERGS's claim because the present matter involves the same issue as the matter on appeal to the District Court. Thus, ERGS asserts the filing of the notice of appeal divests this Court of jurisdiction over aspects of the case involved in the appeal. Mot. 9. ERGS argues the pending appeal and the current matter are related to the same issue, the allowed amount of ERGS's claim, as further "ruling on the allowance of ERGS's unsecured claim, by definition, directly affects the Claim Allowance Order" now on appeal. Mot. 10.

Further, ERGS argues the Debtor has not filed a pleading to allege or show that cause exists for reconsideration of the Claim Allowance Order pursuant to Federal Rule of Civil Procedure 60(b), made applicable through Federal Rule of Bankruptcy Procedure 9024. Additionally, ERGS asserts

---

[3] The Debtor filed the Supplement to First Amended Disclosure Statement on October 15, 2012. The Debtor filed the Third Amended Plan of Reorganization and the Second Amended Disclosure Statement on January 22, 2013. The Second Amended Disclosure Statement provides:

> Currently pending before the Court is a motion to determine how to credit the monthly adequate protection payments made by the Debtor. The Debtor believes that the adequate protection payments will eliminate any unsecured deficiency claim and therefore ERGS will be entitled to post-petition interest and attorney's fees as permitted by Section 506(b) of the Code up to $38,390,000.00, to ensure that it receives an Allowed Secured Claim of the value of its collateral as of the Effective Date of the Plan.

Second Am. Disclosure Statement 14. The Court understands this to mean that ERGS may seek post-petition interest on the $38,390,000.00 value of its secured claim, but will only be entitled to do so should the adequate protection payments eliminate the unsecured deficiency and cause ERGS to be oversecured.

the Debtor is barred by the doctrines of *res judicata*, law of the case, and judicial estoppel from seeking further reduction in the allowed amount of ERGS's secured and unsecured claims.

In the alternative, should the Court determine it is appropriate to hear the issue of the application of the adequate protection payments, ERGS argues the payments should not reduce the unsecured deficiency claim, but should be applied to the secured claim instead. ERGS claims the majority of courts have adopted the approach of crediting payments against the secured claim as opposed to the unsecured claim. Mot. 21. Alternatively, if the adequate protection payments are not applied to ERGS's secured claim, then the Court should find the adequate protection payments were in compensation for the overall diminution in value of ERGS's collateral and should be applied to ERGS's super-priority adequate protection claim. Mot. 26. Finally, in a third alternative, ERGS argues the adequate protection payments should be applied to post-petition interest, resulting in no change to the principal amount of the allowed secured claim. *Id*.

The Debtor counters by explaining that the issue of the application of the adequate protection payments is not an issue on appeal, rather it has never been decided. In the objection to ERGS's claim, the Debtor objected to the balance of the claim being overstated in the amount of $179,969.12. The Debtor asserts nothing in the objection to claim addresses the application of the adequate protection payments. Resp. 3. The issue was neither briefed nor addressed by either party at the hearing. *Id*. The issue of whether or not ERGS is entitled to charge retroactive default interest as part of the pre-petition claim is separate and distinct from the application of adequate protection payments made post-petition. *Id*. As the objection to claim neither addressed the same issue or claim, the doctrines of *res judicata*, law of the case, and judicial estoppel do not prevent the Court from hearing the present matter. The Debtor recognizes there is a line of cases that find post-petition

6

payments should be applied to the secured portion of a claim.  However, the Debtor asserts that 11 U.S.C. § 552(b) extends ERGS and its predecessor's pre-petition lien to rental income, which essentially allows the secured portion of an undersecured creditor's collateral to increase as rental income is collected by a debtor.  According to the Debtor, the net effect of the increase in a creditor's collateral is that payments reduce the unsecured portion of a claim first.  Resp. 9.

## DISCUSSION

**I.    Jurisdiction**

### A.    The Effect of the Notice of Appeal

In the Motion, ERGS argues the Court has no jurisdiction over the present issue because the filing of a notice of appeal divests the bankruptcy court of control over the aspects of the case involved in the appeal. Mot. 9.  "As a general rule, the filing of an appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 263 (4th Cir. 2011) (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)).  "The purpose of the general rule is to avoid the confusion of placing the same matter before two courts at the same time and preserve the integrity of the appeal process." *Whispering Pines Estates, Inc. v. Flash Island, Inc. (In re Whispering Pines Estates, Inc.)*, 369 B.R. 752, 757 (1st Cir. B.A.P. 2007).  "However, a pending appeal of a bankruptcy decision does not deprive the bankruptcy court of jurisdiction over issues not involved in the appeal." *In re Taylor*, 198 B.R. 142, 154 (Bankr. D.S.C. 1996) (citing *In re Schultz Mfg. Fabricating Co.*, 956 F.2d 686 (7th Cir. 1992)).  Furthermore, "[t]he application of a broad rule that a bankruptcy court may not consider any request filed while an appeal is pending has the

potential to severely hamper a bankruptcy court's ability to administer its cases in a timely manner." *Whispering Pines Estates, Inc.*, 369 B.R. at 758.

In support of its argument, ERGS contends, "[i]t is clear that the pending appeal and the Debtor's extraordinary relief deal with the same issue—the allowed amount of the ERGS Claim." Mot. 10. The Claim Allowance Order stated the Debtor "objected to ERGS's inclusion of $172,969.12" in ERGS's proof of claim, which ERGS stated "include[d] default interest from December 16, 2011 through January 29, 2012." *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, 2012 WL 3260287, at *1 (Bankr. E.D.N.C. Aug. 8, 2012). The Court sustained the Debtor's objection to claim, "to the extent the Proof of Claim filed by ERGS II, L.L.C. [sought] to recover retroactive default interest from the date of maturity through January 29, 2012." *Id*. at *5. The Court found "ERGS II, L.L.C.'s claim in the amount of $39,236,631.03 shall be reduced to $39,063.661.91. Further, the claim of ERGS II, L.L.C. shall be treated as a secured claim in the amount of $38,390,000.00, and an unsecured claim in the amount of $673,661.91." *Id.* Additionally, in determining that ERGS was entitled to an unsecured claim in the amount of $673,661.91, the Court specifically addressed the language in the parties' agreement and whether it provided for interest at the default rate. The Court found that while the agreement executed by the Debtor did provide for a default rate of interest, the note holder must first, "at its option," declare the note in default before the default rate is effective. *Id.* Because BB&T, the predecessor to ERGS, "chose, 'at its option' to wait until January 30, 2012 to declare the Secured Notes in default," ERGS was not entitled to interest at the default rate prior to January 30, 2012. *Id.*

The Court did not address, and the parties did not raise, the issue of the application of the adequate protection payments in the Claim Allowance Order. ERGS argues that because resolution

of the present issue will affect payment of the secured or unsecured claims, it ultimately concerns the secured and unsecured claim amounts, which are the subject of the August 16, 2012 notice of appeal.  However, the Court finds the subject of the Claim Allowance Order and the present issue, the application of the Debtor's adequate protection payments, are separate and distinct.  The issue on appeal before the district court is the objection to ERGS's claim and whether ERGS is entitled to interest at the default rate on its claim prior to January 30, 2012.[4]

The issue before this Court is whether the Debtor's adequate protection payments to ERGS should be applied to ERGS's secured claim, unsecured claim, or neither.  Resolution of the present issue will not alter the total amounts of ERGS's secured or unsecured claims, but instead relates to how those claims will be paid.  Pursuant to the Claim Allowance Order, ERGS is still entitled to a secured claim in the amount of $38,390,000.00 and an unsecured claim in the amount of $673,661.91, until otherwise determined by the district court.  What may change is the outstanding balance of either of those claims, based on the application of the Debtor's adequate protection payments.  Therefore, the Claim Allowance Order addressed an entirely different issue than that presently pending before the Court.[5]

For this reason, the purpose of the rule divesting trial courts of jurisdiction on matters on appeal is not frustrated in this instance.  *See Whispering Pines Estates, Inc.*, 369 B.R. at 757.  On

---

[4] The Notice of Appeal filed by ERGS on August 16, 2012, states "ERGS II, L.L.C. appeals the Order [Sustaining Debtor's Objection to Proof of Claim of ERGS II, L.L.C.] in its entirety." Notice of Appeal, *In re Lichtin/Wade L.L.C.*, No. 12-00845-8-RDD, at 1 (Aug. 16, 2012).

[5] Because the Court finds the issue addressed in the Claim Allowance Order and the present issue are not one in the same, the Debtor need not file a pleading alleging sufficient cause pursuant to Rule 60(b) for reconsideration of the Claim Allowance Order.

appeal the district court may still affirm or reverse the Claim Allowance Order and such determination will not have bearing on the manner in which either claim is paid, only the ultimate amount of the claim. Furthermore, failure to consider the issue will hamper this Court's ability to administer the case in a timely manner. *Id*. at 758. The parties have litigated numerous issues in this bankruptcy proceeding and are approaching confirmation. Declining to hear the present issue before confirmation would frustrate the Court's ability to determine whether the proposed plan of reorganization complies with the requirements of 11 U.S.C. § 1129, notably, whether the plan is proposed in good faith, whether the plan is feasible, and whether at least one class of impaired claims has accepted the plan.

### B.    The Doctrines of *Res Judicata*, Law of the Case, and Judicial Estoppel

Federal courts apply the forum state's law on *res judicata*. *Fowler v. Fowler (In re Fowler)*, 312 B.R. 287, 292 (Bankr. E.D.N.C. 2004). In North Carolina, in order to claim the doctrine of *res judicata*, a party must meet the following elements: "(1) a final judgment on the merits in an earlier suit, (2) an identity of the causes of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits." *Id*. (quoting *Stafford v. Bladen County*, 163 N.C. App. 149, 151, 592 S.E.2d 711, 713 (2004)). "An 'indispensable requirement of *res judicata* . . . is actual litigation of the issue.'" *Id*. (quoting *M & M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146, 1149 (4th Cir. 1991)).

ERGS contends *res judicata* bars the Court from hearing the present matter because there is identity between the parties and claims involved in the Claim Allowance Order, which was a final judgment on the merits. These elements having been met, ERGS concludes that "[i]f the Debtor intended to challenge and seek reduction in the allowed amount of ERGS's unsecured claim based

on the application of the adequate protection payments . . . it was obligated to litigate that issue at the July 10, 2012 hearing on the Claim Objection." Mot. 15. As previously addressed, the issue before the Court in the Claim Allowance Order was whether ERGS was entitled to include pre-petition default interest in its claim, not the application of adequate protection payments. Additionally, the Debtor included language in the Disclosure Statement filed on April 11, 2012 that put ERGS on notice of the Debtor's position on the application of the adequate protection payments. Because the language is included in the Disclosure Statement, it is an issue related to confirmation of the Debtor's Plan of Reorganization, and not related to the objection to ERGS's claim, which involved when interest at the default rate accrued. These issues being separate and distinct, *res judicata* does not bar the Court from hearing the present issue.

Neither is the Court barred from addressing the application of the adequate protection payments by law of the case. "Under the law of the case doctrine, a court has the discretion to preclude a party from re-litigating an issue previously decided in the same case." *Moser v. MCC Outdoor, L.L.C.*, 630 F.Supp.2d 614, 626 (M.D.N.C. 2009) (footnote omitted). ERGS contends that because the Court entered the Claim Allowance order it is now precluded from entering judgment on the present issue, as the "Court's prior ruling is law of the case and prevents the Debtor's attempt to re-litigate this issue." Mot. 16. Again, ERGS's argument presupposes that the issue of when the default rate of interest is triggered and the application of the adequate protection payments are one in the same. However, the Court neither heard arguments on nor considered the impact of the adequate protection payments in considering the Claim Allowance Order. Thus, while the application of adequate protection payments has an effect on the unsecured balance outstanding, the

11

two are separate and distinct issues and the Claim Allowance Order is not law of the case as to the present issue.

Furthermore, even if the Claim Allowance Order constituted law of the case, the Fourth Circuit notes that the "law of the case doctrine is not an 'inexorable command' but rather a prudent judicial response to the public policy favoring an end to litigation." *Sejman v. Warner-Lambert Co. Inc.*, 845 F.2d 66, 68 (4th Cir. 1988) (quoting *White v. Murtha*, 377 F.25 428, 431 (5th Cir. 1967)). Additionally, while "the doctrine applies both to questions actually decided as well as to those decided by 'necessary implication,' it does not reach 'questions that might have been decided but were not.'" *Id*. at 69 (quoting *Copra, Inc. v. Ward Foods, Inc.*, 567 F.2d 1316, 1320 (5th Cir. 1978)). Thus, even if the Claim Allowance Order created law of the case, it would not apply to the issue of adequate protection payments as they were not previously addressed by the Court.

Finally, ERGS asserts the doctrine of judicial estoppel prevents the Debtor from seeking further reduction of ERGS's allowed claim amount. The doctrine of judicial estoppel requires four elements: "(1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 292 (4th Cir. 1998). The Fourth Circuit has expanded this last factor to require that a party must have "intentionally misled the court to gain unfair advantage." *Zinkand v. Brown*, 478 F.3d 634, 638 (4th Cir. 2007) (quoting *Tenneco Chem., Inc. v. William T. Burnett & Co.*, 691 F.2d 658, 665 (4th Cir. 1982)).

12

In the present case, the Court cannot find the Debtor's assertion is inconsistent with a position taken during previous litigation. ERGS argues that the Debtor asserted ERGS held an unsecured claim in the amount of $673,661.91, the amount of the unsecured claim the Court allowed in the Claim Allowance Order. ERGS asserts that the Debtor cannot now argue the unsecured claim is substantially less. Mot. 18. However, it appears to the Court that the allowed amount of ERGS's unsecured claim remains the same. What may change is the balance of that claim, based on how the adequate protection payments are applied. Therefore, it is incorrect to suggest the Debtor ultimately relied on one argument and then switched.[6] The Debtor has relied on the Court determined amount of the claim and seeks to have that claim reduced by the adequate protection payments made. Additionally, the Debtor's current assertion is grounded in law rather than in fact, as required by the second element. The parties do not dispute that the Debtor made the adequate protection payments. What is disputed is how those payments should be applied to ERGS's claim, which is a question of law. As such, the first two elements are not met and judicial estoppel does not apply.

Finally, the Court finds no facts supporting an allegation that the Debtor intentionally misled the Court for its own benefit. The Court conducted hearings on the use of cash collateral in the form of post-petition rents and entered orders containing the adequate protection provisions. The purpose of the orders was to provide ERGS with some form of payment until the Debtor reached confirmation and began performing under its plan. The Court and ERGS were both well aware that the Debtor had been making these payments, which would have some effect on the amount of ERGS's claim. Therefore, upon a finding of no bad faith on the part of the Debtor, the Debtor is not

---

[6] As previously noted, the Debtor included language in the Disclosure Statement filed on April 11, 2012, which placed ERGS on notice of the Debtor's position well before the Court heard the objection to claim.

13

judicially estopped from seeking a determination on the application of the adequate protection payments.

## I.    Application of the Adequate Protection Payments

Pursuant to 11 U.S.C. § 506(a), an allowed claim of a creditor secured by a lien on property,

> is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest . . . .

11 U.S.C. § 506(a).  Put more simply, "an unsecured creditor will have a secured claim equal to the value of the collateral and an unsecured claim for the balance." *In re South Side House, L.L.C.*, 474 B.R. 391, 412-13 (Bankr. E.D.N.Y. 2012).  In the Claim Allowance Order, the Court determined that ERGS is allowed a secured claim in the amount of $38,390,000.00 and an unsecured claim in the amount of $673,661.91.  The issue now before the Court is whether the adequate protection payments, required by the interim cash collateral orders, should be applied to ERGS's secured claim, unsecured claim, or neither.  There is no dispute between the parties that the rents generated from the Property constitute cash collateral pursuant to 11 U.S.C. § 363 in which ERGS has a properly perfected security interest by virtue of the assignment of rents and 11 U.S.C. § 552(b).

Further, § 506(b) "permits an oversecured creditor to receive post-petition interest and other charges, and generally prohibits an undersecured creditor from receiving these benefits.  Stated another way, under Section 506(b) and [*United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 374 (1988)], an undersecured creditor may not receive payment in excess of its original claim." *In re South Side House, L.L.C.*, 474 B.R. 391, 413 (Bankr. E.D.N.Y.

2012) (citation omitted).  Therefore, the adequate protection payments made by the Debtor to ERGS must be applied to ERGS's claim in some manner as "payments made by a debtor to a creditor should be applied to the claim, regardless of the source of the payments." *In re Oaks Partners, Ltd.*, 135 B.R. 440, 449 (Bankr. N.D. Ga. 1991).

> As Collier's on Bankruptcy explains,
>
> [w]hen payments are made to an undersecured creditor, one issue that arises is whether the payments should be credited to the secured or the unsecured claim of the creditor. Logically, if payments are credited to the secured claim, the secured claim will decrease as the case progresses, while the unsecured claim will remain constant. Conversely, if payments are credited to the unsecured claim, that claim will decrease and the secured claim will remain constant. From the debtor's perspective, it is preferable to decrease the secured claim, since that claim will in effect have to be satisfied in full in order for the debtor to confirm a plan. . . . Courts are divided on how to apply these principles where the lender has both a security interest in the real estate and an assignment of rents.

3 Collier on Bankruptcy (Alan N. Resnick & Henry J. Sommer eds.,16th ed. 2012) ¶ 361.03[2][a] (footnotes omitted).  Collier's continues, explaining some courts adopt the "subtraction" theory, which applies payments made under an assignment of rents as adequate protection to the portion of the claim secured by real estate.  *Id*; *First Fed. Bank fo Ca. v. Weinstein (In re Weinstein)*, 227 B.R. 284 (9th Cir. B.A.P. 1998); *Confederation of Life Ins. Co. v. Beau Rivage Ltd.*, 126 B.R. 632 (N.D. Ga. 1991); *In re Kalian*, 169 B.R. 503 (Bankr. D.R.I. 1994); *In re IPC Atlanta Ltd. P'ship.*, 142 B.R. 547 (Bankr. N.D. Ga. 1992); *In re Oaks Partners, Ltd.*, 135 B.R. 440 (Bankr. N.D. Ga. 1991); *In re Reddington/Sunarrow Ltd. P'ship.*, 119 B.R. 809 (Bankr. D.N.M. 1990).

Other courts, in light of 11 U.S.C. § 552(b), follow the "addition" view, which provides that payments from assigned rents should reduce a creditor's unsecured deficiency claim by satisfying

15

the portion of the claim that is secured by the assignment of the rents.[7]  3 Collier on Bankruptcy (Alan N. Resnick & Henry J. Sommer eds.,16th ed. 2012) ¶ 361.03[2][a] (footnotes omitted); *In re South Side House, L.L.C.*, 474 B.R. 391, 412-13 (Bankr. E.D.N.Y. 2012); *In re Gramercy Twins Assoc.*, 187 B.R. 112 (Bankr. S.D.N.Y 1995); *In re Vermont Inv. Ltd. P'ship*, 142 B.R. 571 (Bankr. D.D.C 1992); *In re Union Meeting Partners*, 178 B.R. 664, 677 (Bankr. E.D. Penn. 1996) (finding post-petition payments should be subtracted from the aggregate claim, but not the secured portion); *In re Flagler-At-First Assocs., Ltd.*, 114 B.R. 297 (Bankr. S.D. Fla. 1990) (postpetition rents should not be credited to principal); *In re Columbia Office Assoc. Ltd. P'ship.*, 175 B.R. 199 (Bankr. D. Md. 1994) (payment could not be credited to the secured claim).  Section 552(b) provides that a pre-petition security agreement that created a security interest in proceeds, products, offspring, or profits of collateral will extend to the same post-petition.  11 U.S.C. § 552(b)(1); *see also In re Gramercy Twins Assocs.*, 187 B.R. at 122 (Post-petition adequate protection payments based on an assignment of rents should be "considered protection for the separate interest in the rents in accord with § 552(b)" and credited against the allowed amount of the creditor's secured claim to indirectly reduce the unsecured portion.).

---

[7] Section 552(b)(1) provides:

[I]f the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b)(1).

The benefit of § 552(b) to a creditor who holds a valid security interest in rent is that it allows the unsecured portion of a creditors claim to receive distributions ahead of other unsecured creditors. *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 374 (1988) ("Section 552(b) therefore makes possession of a perfected security interest in postpetition rents . . . a condition of having [the rents] applied to satisfying the claim of the secured creditor ahead of the claims of [other] unsecured creditors."); *In re 354 East 66th St. Realty Corp.*, 177 B.R. 776, 781 (Bankr. E.D.N.Y. 1995) (One of the rights granted to creditors with an assignment of rent is "the right to apply the net post-petition rents to [a creditor's] claim to the exclusion of the other creditors."). While this contravenes the traditional priority scheme of the Bankruptcy Code, it is a right conferred by § 552(b).

Therefore, this Court is tasked with determining the effect of periodic payments to an undersecured creditor with a post-petition security interest in the proceeds or rents derived from the creditor's collateral pursuant to § 552(b). The issue has not been raised before this Court before, largely because most debtors would prefer any post-petition payments be credited to the secured portion of a creditor's claim, thereby reducing future plan obligations. Additionally, it is rare for such payments to completely eliminate an unsecured deficiency claim as could happen in this case.

The "subtraction" cases treat the payments as offsetting any decline in the value of the real property collateral, while the payment of the rents protects the creditor's overall interest in the real property and the rents combined.[8]  3 Collier on Bankruptcy (Alan N. Resnick & Henry J. Sommer eds.,16th ed. 2012) ¶ 361.03[2][a]. Generally, courts in these cases share the concern that

---

[8]  ERGS presented no evidence that the value of real property and rental income is declining.

application of post-petition payments would improve an undersecured creditor's position as compared to other unsecured creditors or allow the undersecured creditor to receive post-petition interest in violation of 11 U.S.C. § 506(b). *First Fed. Bank of Cal. v. Weinstein (In re Weinstein)*, 227 B.R. 284, 297 ( 9th Cir. B.A.P. 1998) ("Applying postpetition, preconfirmation payments to reduce the unsecured claim would give the undersecured creditor an unwarranted bonus."); *In re IPC Atlanta Ltd. P'ship*, 142 B.R. 547 (Bankr. N.D. Ga. 1992) (Allowing an undersecured creditor to keep post-petition payments would give the creditor more than its allowed claim and "receive interest payments or use value."); *In re Reddington/Sunarrow Ltd. Pshp.*, 119 B.R. 809, 814 (Bankr. D.N.M. 1990) ("An undersecured creditor is entitled to be protected to the extent its collateral is depreciating, but its position is not to be improved in relation to other creditors."); *Confederation Life Ins. Co. v. Beau Rivage Ltd.*, 126 B.R. 632, 640 (Bankr. N.D. Ga. 1991) (explaining payments to an undersecured creditor must be applied to the secured claim "[o]therwise the payments would be treated as interest payments or use value . . . ."); *In re Spacek*, 112 B.R. 162, 165 (Bankr. W.D. Tex. 1990) (Where "the value of the collateral has not decreased during the case, the adequate protection payments . . . must be applied against the secured portion of [the creditor's] indebtedness."); *In re Mullen*, 172 B.R. 473, 479 (Bankr. D. Mass. 1994) (finding an undersecured creditor was not entitled to post-petition interest and was required to apply rents to the principal indebtedness.).   However, a number of these courts overlook the impact of § 552(b), strictly following the holding of *Timbers.  In re Weinstein*, 227 B.R. at 297 (explaining adequate protection payments are not meant to improve an undersecured creditor's position in relation to other creditors, as such a bonus would be akin to providing the creditor with interest, which is prohibited by *Timbers*).

18

As explained in *In re South Side House, L.L.C.*, which the Debtor argues is instructive, the "addition" cases recognize the separate security interest in rents allowed by § 552(b). *In re South Side House, L.L.C.*, 474 B.R. 391 (Bankr. E.D.N.Y. 2012); *see also In re 354 East 66th Street Realty Corp.*, 177 B.R. 776, 783 (Bankr. Ct. 1995) (One of the rights granted to creditors with an assignment of rent is "the right to apply the net post-petition rents to [a creditor's] claim to the exclusion of the other creditors."); *In re Gramercy Twins Assocs.*, 187 B.R. 112, 121-22 (Bankr. S.D.N.Y. 1995) (reducing the unsecured deficiency claim is not a violation of § 506 because the purpose of cash payments is to protect a perfected security interest in the rents). The facts in *South Side House* are analogous to the present case. Both cases involved single asset real estate debtors.[9] *South Side House, L.L.C.*, 474 B.R. at 396. As in this case, the debtor received court authorization to use cash collateral, in the form of rent, of a secured creditor pursuant to 11 U.S.C. § 363. *Id.* at 398. The court required the debtor to make monthly payments of $155,000.00 to the secured creditor, with replacement liens on and security interests in the rent received by the debtor. *Id.* The debtors in both cases made payments to the undersecured creditor and the unsecured portion of the claim was paid in full prior to a confirmation hearing. *Id.* at 418. The debtor made approximately $4,600,000.00 in payments to the secured creditor during the pendency of the Chapter 11 proceeding. *Id.* at 396. After a nine (9) day confirmation hearing, the bankruptcy court determined the debtor had sufficient interest in the rent derived from the collateral to bring them into the bankruptcy estate pursuant to 11 U.S.C. § 541. *Id.* at 412-13. Thus, the court determined the rents constituted the secured creditor's cash collateral and became subject to the creditor's liens pursuant to § 552(b). *Id.*

---

[9] The Court entered an order on April 6, 2012 finding the Debtor operates as a single asset real estate entity and is subject to the requirements of 11 U.S.C. § 362(d)(3).

at 412. Next, the court examined the application of payments from the rents to the secured creditor's claim and found such payments will reduce the unsecured portion of a claim and, if the unsecured claim is paid in full, the excess payments should be applied to reduce the secured claim, along with any post-petition interest and fees. *Id*. at 415-16. The court reasoned that

> when a creditor receives payments from rents, its collateral is returned to it. And courts recognize that if the debtor had not been able to use the rents, and instead the excess rents were segregated into a cash collateral account, the segregated rents would be added to the value of the creditor's secured claim. But because Section 506(b) prohibits a creditor from receiving more than its allowed claim, the unsecured portion of a creditor's claim will be reduced by the amount of the payments.

*Id*. at 415. The court continued, explaining that the

> [t]he unsecured portion will be reduced because the overall claim of [the creditor] will be reduced by the payments made, since the creditor is not allowed in any circumstances to receive more than the amount of its total claim. When the secured portion (based on the value of the property) is subtracted from the reduced total claim, the unsecured portion that remains is correspondingly reduced by the amount of the payment.

*Id*. at 416 (quoting *In re Gramercy Twins Assocs*., 187 B.R. at 122 n 23). Therefore, a "[d]ebtor's payments from the [r]ents should be applied first to the unsecured portion of the [l]ender's claim until it is reduced to zero, and then to the post-petition interest, fees, costs, and charges allowed under Section 506(b), and finally to principal." *Id*. at 420.

The court in *South Side House* also cites Collier's interpretation of how rents should be distributed, stating that

> [b]ecause the rents serve as additional collateral, the value of the collateral increases with each rent collection, and the secured creditor is already entitled to the increase in the value of the rents over time, independent of the increase or decrease in value of the real property. Any payment to the creditor of the rents is a transfer of its own collateral. Therefore, the better view, the "addition" view, is that the payments from assigned rents should not be applied to the real property secured claim. Rather, the payments reduce the creditor's unsecured deficiency claim by satisfying the portion

20

of the claim that is secured by the assignment of rents. This seems to have become the majority view.

3 Collier on Bankruptcy (Alan N. Resnick & Henry J. Sommer eds.,16th ed. 2012) ¶ 361.03[2][a] (footnotes omitted).

In light of the conflicting views in the "addition" and "subtraction" cases, the Court finds that § 552(b) creates a separate security interest in the rent derived from the Property, which is distinct from the value of the Property itself. Because the rents increase during the pendency of the bankruptcy case, correspondingly, the value of the total collateral, over and above the value of the Property, also increases. When this occurs, the undersecured portion of ERGS's claim must then decrease, because the total amount of collateral is increasing. It is not until the value of the collateral increases to the point that ERGS no longer has an unsecured claim that ERGS will be entitled to post-petition interest and fees pursuant to § 506(b). This Court finds *South Side House* and the other "addition" cases, correctly recognize the existence of the § 552(b) security interest in post-petition rents and properly reduce the unsecured claim by the amount of the rent collateral held by the Debtor. *South Side House, L.L.C.*, 474 B.R. at 421. This treatment is in accord with *Timbers*, in that § 552(b) requires a perfected security interest in rent in order to have them "applied to satisfy the claim of the secured creditor ahead of the claims of unsecured creditors." *Timbers*, 484 U.S. at 374. Since the Supreme Court interprets § 552(b) to allow secured creditors with an assignment of rent to reduce their unsecured claim, the question of secured creditors taking ahead of other unsecured creditors is not at issue.[10]

---

[10]   The Second Amended Plan of Reorganization provides that general unsecured claims with allowed claims greater than $5,000.00 shall be paid in full. The Third Amended Plan of Reorganization creates a separate class for ERGS's unsecured deficiency claim, if any, as a result of the Court's ruling on the adequate protection payments in Class 7. The Third Amended Plan of

ERGS asserts that treatment under the "subtraction" cases is the only appropriate method to apply the adequate protection payments.  ERGS argues that when a secured creditor receives back a portion of its own collateral, the amount of its secured claim reduces.  This methodology fails to account for the increase in ERGS's collateral based on the amount of rent collected and ignores the effect of § 552(b) and the assignment of rents.  Further, the concern the "subtraction" cases share over allowing an undersecured creditor to collect post-petition interest and fees in violation of § 506(b) is unfounded.  Under the "addition" method, post-petition interest and fees are not awarded to an undersecured creditor until its unsecured deficiency claim reaches zero, at which point, as the collateral continues to grow, the creditor will become fully or oversecured.  *South Side House, L.L.C.*, 474 B.R. at 420.

Alternatively, if the Court does not find the adequate protection payments reduce the secured claim, then ERGS asserts the Court should find the payments compensate it for the diminution in value of ERGS's collateral and should be applied to ERGS' super-priority adequate protection claim. ERGS argues that the Debtor's use of cash collateral eroded the overall value of ERGS's collateral. Because the overall value of the collateral diminished, ERGS asserts it was entitled to adequate protection through payment of a portion of the rents, especially where there is no other unencumbered collateral to protect its interests.  ERGS cites *In re Flagler-at-First Assocs., Ltd.* in support of the position that a secured creditor has a right to receive a portion of the rent from its real property collateral as adequate protection against a debtor's erosion of the value of the cash

---

Reorganization provides that both the ERGS unsecured deficiency claim (Class 7) and the general unsecured claims (Class 8) will be paid in full. Therefore, the Court finds no unfair discrimination will result from the application of the adequate protection payments to ERGS's unsecured deficiency claim in this case because all unsecured creditors with claims over $5,000.00 will receive payment in full.

collateral. *In re Flagler-at-First Assocs., Ltd.*, 114 B.R. 297, 303 (Bankr. S.D. Fla. 1990). In *Flagler-at-First Associates*, the debtor argued the post-petition payments to the creditor should be reduced from the secured claim. The court explained that accepting the debtor's position "would require the conclusion that [the creditor] has no interest in the post-petition rental revenues generated by the [real property collateral]." *Id.* at 299. The result, according to the *Flagler* court, "is essentially a 'wash' in that the additional collateral value represented by the excess rents is to be set-off by the fact that [the creditor] has already received them during the course of the" case. *Id.* at 302. Based on *Flagler*, ERGS argues "there should be no reduction in any portion of the ERGS Claim as a result of the post-petition adequate protection payments." Mot. 26. This Court can see no logical reason to deny crediting any portion of ERGS's claims to the extent of the adequate protection payments. If no portion of ERGS's claim was credited by the payments, ERGS would be entitled to the allowed amount of its secured claim, the allowed amount of its unsecured claim, and the aggregate of the payments. This is in direct conflict with § 506(b), which "prohibits a creditor from receiving more than its allowed claim." *In re South Side House, L.L.C.*, 474 B.R. at 420. Therefore, the unsecured claim will be reduced as ERGS's collateral increases through any post-petition payments from the rents received.

Further, courts have held it is possible for a secured creditor with an assignment of rent to be adequately protected by the net rental proceeds after payment of "necessary expenses of maintaining the rental project." *Travelers Ins. Co. v. River Oaks Ltd. P'ship (In re River Oaks Ltd. P'ship)*, 166 B.R. 94, 98 (Bankr. E.D. Mich 1994). *River Oaks Limited Partnership* explains one line of cases holds that a creditor can be "'adequately protected' as long as the rental income is used only for the necessary expenses of maintaining the rental project." *Id.* (citing *In re Forest Ridge, II,*

*Ltd. P'ship*, 116 B.R. 937, 948 (Bankr. W.D.N.C. 1990)).  Other cases hold the cash collateral of an undersecured creditor may be used pursuant to 11 U.S.C. § 506(c), which provides an exception for the reasonable, necessary costs and expenses of preserving property.  *Id*. (citing *In re KNM Roswell Ltd. P'ship*, 126 B.R. 548, 557 (Bankr. N.D. Ill. 1991)); 11 U.S.C. § 506(c).  The Final Order (A) Authorizing Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. § 363, and (B) Granting Adequate Protection Pursuant to Sections 361, 363, and 364 of the Bankruptcy Code, provides the Debtor is authorized to use the cash collateral for "post-petition reasonable, necessary costs and expenses of preserving the Debtor's property."  *In re Lichtin/Wade, L.L.C.*, No. 12-00845-8-RDD, at 8 (Bankr. E.D.N.C. May 18, 2012).  Therefore, the Court is not convinced that ERGS is entitled to a super-priority adequate protection claim for the diminution of its cash collateral because the Debtor was authorized to use the cash collateral only for reasonable, necessary costs and expenses and ERGS received monthly cash payments and replacement liens in the rent.[11]  *Id*. at 11-12.

Finally, as a third alternative, ERGS argues the adequate protection payments should be applied to post-petition interest, resulting in no change to the principal amount of the allowed claim. ERGS cites *In re Columbia Office Associates, L.P.* and *In re Vermont Investment, L.P.* for the proposition that that the total amount of interest and costs accruing post-petition will equal or exceed the amount of post-petition payments, creating a "wash," by which there was no reduction in the principal amount of the secured creditor's claim.  *In re Columbia Office Assocs. Ltd. P'ship*, 175

---

[11] *In re Buttermilk Towne Center, L.L.C.*, 442 B.R. 558 (6th Cir. B.A.P.  2010) holds that replacement liens in rent do not provide adequate protection to a creditor for a debtor's use of rents as cash collateral for the payment of professional fees. However, this holding applies strictly to the use of cash collateral for the payment of professional fees, not reasonable, necessary maintenance for the property.

B.R. 199, 204 (Bankr. D. Md. 1994); *In re Vermont Inv. L.P.*, 142 B.R. 571, 573 (Bankr. D.C. 1992).

However, the court in *Columbia Office Associates* recognizes that

> [e]ach dollar of net rent increased [the creditor's] allowed secured claim to the extent that postpetition interest and costs came due under the loan documents. Because the total amount due under the loan documents postpetition exceeded [the payment amount], the payment of net rents reduced [the creditor's] allowed secured claim, dollar for dollar, resulting in a "wash."

*In re Columbia Office Assocs. Ltd. P'ship*, 175 B.R. at 204. But allowing an undersecured creditor to receive payment for post-petition interest and fees clearly violates § 506(b). The property value must be "greater than the amount of" a creditor's claim. 11 U.S.C. § 506(b). Therefore, as held by the majority of courts, adding the amount of the adequate protection payments to the secured portion of the claim and correspondingly reducing the unsecured portion of the claim is the only appropriate mechanism to comply with § 506(b). Only when a creditor's unsecured claim equals zero and an equity cushion exists, is it then appropriate to award a creditor post-petition interest and fees. *Timbers*, 484 U.S. at 372-74 (Since § 506(b) "permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest."). Therefore, the Court finds ERGS's third alternative inapplicable.

Accordingly, the Court finds the adequate protection payments shall be added to the value of the Property, increasing the overall amount of collateral securing ERGS's claim and correspondingly reducing the amount of ERGS's unsecured deficiency claim.[12] As ERGS's

---

[12] The Debtor indicates it made total payments of $1,371,163.26 between February and October 2012. Based on the final cash collateral order, the Debtor should have made payments totaling $491,652.54 between November 2012 and January 2013, for a total of $1,862,815.80. This increases the value of ERGS's collateral (the Property and rents) to $40,252,815.80. ERGS's secured claim of $3,390,000.00 plus the unsecured deficiency of $673,661.91 is

unsecured deficiency claim is reduced to zero, ERGS becomes oversecured.  Therefore, ERGS will be entitled to post-petition interest and fees pursuant to § 506(b).  Accordingly, the Motion is **DENIED**.

       **SO ORDERED**.

**END OF DOCUMENT**

---

$39,063,661.91. Subtracting this amount from $40,252,815.80, ERGS should now oversecured in the amount of $1,189,153.89. The Court understands the Debtor increased its payments to ERGS between August and October 2012. If the Debtor continued to make more than the Court ordered payment between November 2012 and January 2013, the amount that ERGS is oversecured should increase in conjunction with those payments.