SO ORDERED.

SIGNED this 9 day of August, 2013.

_____
Randy D. Doub
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| LICHTIN/WADE, LLC | CASE NO.: 12-00845-8-RDD |
| DEBTOR | |

### ORDER APPROVING (A) FORM AND MANNER OF NOTICE AND BIDDING PROCEDURES, (B) SETTING DEADLINES FOR BIDS AND OBJECTIONS, AND (C) SCHEDULING AUCTION AND FINAL HEARING

THIS MATTER came before the Court for purposes of an interim order establishing sale procedures and approving certain purchaser protections in connection with the Trustee's Motion For An Order (I)(A) Establishing Bidding Procedures, (B) Approving Stalking Horse Bidder, (C) Approving Form And Manner Of Notices, (D) Scheduling A Hearing Date To Consider Final Approval Of Sale And Treatment Of Executory Contracts And Unexpired Leases, And (E) Granting Related Relief; And (II)(A) Approving Sale Free And Clear Of All Liens, Claims And Encumbrances; And (B) Authorizing The Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases (the "Sale Motion") filed by Joseph N. Callaway, the duly appointed Chapter 7 Trustee in this case ("Trustee"), pursuant to §§ 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of Bankruptcy Procedure.

Upon consideration of the Sale Motion, and it appearing that this Court has jurisdiction to consider the Sale Motion; that the relief requested in the Sale Motion is in the best interests of

the Debtor's estate and all parties in interest; that due and adequate notice of the relief requested by the Trustee for entry of this Order has been given, that due and adequate notice of the Sale Motion has been given; that exigent circumstances exist to justify a sale of the Sale Assets pursuant to Section 363 of the Bankruptcy Code, and that the sale is within the reasonable business judgment of the Trustee and is in the best interest of the estate, subject to exposing the Sale Assets to higher and better bids and after further hearing to confirm the proposed sale; and sufficient cause appearing therefore:

**IT IS HEREBY ORDERED THAT:**

1. The "Sale Procedures" attached as <u>Exhibit A</u> to this Order are hereby approved by the Court and incorporated by reference and made a part of this Order as if set forth fully herein. The Sale Procedures shall govern any Auction conducted in connection with the Sale. Capitalized terms used herein but not defined shall have the same meaning as set forth in the Sale Procedures.

2. The "Break-Up Fee" as provided in the Sale Procedures is expressly approved and authorized. The Break-Up Fee is hereby approved as an administrative expense in this Chapter 7 case pursuant to Sections 503 and 507 of the Bankruptcy Code, and, on the terms and subject to the conditions set forth in the Sale Procedures, the Trustee is hereby authorized to pay such Break-Up Fee to Initial Purchaser, in cash, as set forth in Section 13 of the Sale Procedures.

3. The selection of the Initial Purchaser as stalking horse bidder constitutes a proper exercise of the Trustee's business judgment.

4. The Overbid Deadline is hereby set for **5:00 p.m. EST on September 3, 2013**. The Auction Date is hereby set for **1:00 p.m. EST on September 5, 2013**, to be conducted at the offices of the Debtor located at 5420 Wade Park Boulevard, Suite 104 (Wade I, First Floor) ,

Raleigh, NC, 27607. Any Overbid must be received by Trustee by the Overbid Deadline in accordance with the Sale Procedures.

     5.     The Final Sale Hearing to grant the Sale Order and approve the Sale shall be held before this Court at **10:00 am EST on September 10, 2013** in the U.S. Bankruptcy Court, 3rd Floor Courtroom, 300 Fayetteville Street, Raleigh, North Carolina.  Any objections to the Sale Motion must be filed no later than the Objection Deadline which is 4:00 p.m. EST on September 6, 2013, and served in accordance with the Sale Procedures.

     6.     The notice contemplated by the Sale Motion, and service of this Order, the Sale Procedures, the Sale Contract and the proposed Sale Order is adequate and sufficient notice of the proposed sale and no additional notice need be given.  Without limiting the generality of the foregoing, the Court specifically approves the form of Notice of Sale attached as <u>Exhibit B</u> to this Order.

     7.     The failure specifically to include any particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of this Court that the Bidding Procedures are authorized and approved in their entirety.

     8.     This Order is effective immediately upon entry by the Court.

[END OF DOCUMENT]

**EXHIBIT A TO ORDER**

**SALE PROCEDURES**

The following procedures (the "**Sale Procedures**") have been approved and authorized by order (the "**Sale Procedures Order**") of the United States Bankruptcy Court for the Eastern District of North Carolina (the "**Bankruptcy Court**") in the Chapter 7 case of Lichtin/Wade LLC (the "**Debtor**"), Case No. 12-00845-8-RDD, and shall govern the proposed sale (the "**Sale**"), including any auction (the "**Auction**") conducted in connection therewith, of certain real property and other assets (the "**Sale Assets**") of the Debtor, pursuant to the Trustee's motion for an order authorizing the Sale and granting related relief (the "**Sale Motion**") in connection with the Real Estate Purchase and Sale Agreement dated August 2, 2013, (the "**Sale Contract**"), between The Prudential Insurance Company of America (or any of its designees, the "**Initial Purchaser**") and Joseph N. Callaway, Bankruptcy Trustee for Lichtin/Wade, LLC ("**Trustee**" or "**Seller**"):

1. **Notice.** The Sale Motion shall be subject to a TWENTY ONE (21) DAY NOTICE PERIOD (the "**Notice Period**"), with a final hearing on the Sale Motion as noticed therein (the "**Final Sale Hearing**"). Any Auction (as defined below) triggered by the filing of a qualifying topping bid shall be conducted and held before the Final Sale Hearing. The Trustee shall give notice of the proposed Sale, the Notice Period, the Overbid Deadline (as defined below), the date, time and place of the Final Sale Hearing, and these Sale Procedures to prospective overbidders as required by the Sale Procedures Order and Fed.R.Bank.P. 6004 (the "**Notice of Sale**"). Trustee shall provide the Initial Purchaser with a copy of the Notice of Sale and all attachments thereto when it is sent to interested parties and prospective overbidders. The Trustee shall not solicit, entertain, discuss or otherwise pursue any overbids or other transactions concerning the Sale Assets during the period between execution of the Sale Contract and the date on which the Notice of Sale that is approved by the Sale Procedures Order is issued by the Trustee.

2. **Diligence by Prospective Overbidders.** Following issuance of the Notice of Sale, the Trustee may receive and consider unsolicited offers for the Sale Assets, provide information to any such prospective overbidder, and allow any such prospective overbidder to conduct due diligence in connection with consideration of a potential overbid for the Sale Assets; <u>provided</u>, <u>however</u>, that any such prospective overbidder desiring to conduct due diligence shall (a) demonstrate the financial ability, as determined by Trustee in his reasonable discretion, to consummate a transaction for the purchase of the Sale Assets, and (b) execute a confidentiality agreement in a form acceptable to Trustee in his sole discretion. Notwithstanding anything herein to the contrary, the Initial Purchaser shall be deemed to have satisfied the requirements to conduct due diligence set forth in this <u>Section 2</u> of these Bid Procedures.

3. **Overbid Requirements.** Any entity (other than the Initial Purchaser) that is interested in purchasing the Sale Assets (an "**Overbidder**") must submit to Trustee an "**Initial Overbid**" in writing and, in conformance with this section, also must serve a copy of the Initial Overbid on the Initial Purchaser and its counsel and the Secured Lender and its counsel at the addresses provided in the Sale Motion (the Trustee, Initial Purchaser and

4

Secured Lender, together with their respective counsel are collectively hereinafter referred to as the "**Notice Parties**"). Service shall be in a manner such that the Initial Overbid is received by the Notice Parties no later than the Overbid Deadline. Service on the Trustee and counsel for the Secured Lender <u>and counsel for the Initial Purchaser</u> may be accomplished electronically with a copy thereof emailed to the attorneys noted below before the end of the stated deadline. Every such Initial Overbid must contain or be accompanied by:

(a) An executed Sale Contract in the form of its Initial Overbid, with the only adjustments being the purchase price, identity of the Overbidder as purchaser and variations intended to present a higher and better offer than the Initial Purchaser's offer, does not include any right to receive a break-up fee or expense reimbursement and does not contain contingencies for financing, further due diligence or any corporate approval (the "**Revised Sale Contract**").

(b) Contain both an executed, definitive Revised Sale Contract including all schedules or exhibits thereto, as well as providing the Trustee with a blackline version comparing the Revised Sale Contract to the Initial Purchaser's Sale Contract showing all changes made by the Overbidder.

(c) Contain terms and conditions no less favorable to Seller than the terms and conditions of the Sale Contract.

(d) Provide for cash consideration to the bankruptcy estate that is greater than the Initial Purchaser's Purchase Price (as defined in the Sale Contract) by an amount not less than the sum of such Purchase Price plus $300,000.00 (which amount represents the Break-up Fee (as defined below) and an additional $150,000 (collectively, the "**Initial Overbid Purchase Price**", being the sum of at least $46,200,000.00).

(e) Be a "firm offer" and not contain any contingencies to the validity, effectiveness, and/or binding nature of the offer, including, without limitation, contingencies for financing, due diligence or inspection except for the conditions to closing provided for in the Sale Contract.

(f) Provide to the Trustee, if requested, affidavits or declarations establishing the Overbidder's good faith, within the meaning of Section 363(m) of the Bankruptcy Code.

(g) Provide to the Trustee: (i) financial statements or admissible evidence in the form of affidavits or declarations establishing that the Overbidder is ready, willing, authorized, capable, and qualified, financially, legally, and otherwise, of unconditionally performing all obligations under the Sale Contract (or its equivalent) in the event that it submits the prevailing overbid at the Auction, and (ii) evidence that it is duly authorized and entitled to engage in the transaction contemplated by the Initial Overbid without the consent of any entity that has not been obtained.

5

      (h)    Be accompanied by a deposit in an amount equal to one million dollars ($1,000,000.00) (the "**Deposit Amount**") in the form of either: (i) funds placed in the trust account of an attorney licensed to practice before the United States Bankruptcy Court for the Eastern District of North Carolina; (ii) the trust account of another attorney acceptable to the Trustee in his sole discretion; (iii) a deposit in the escrow account of a national title or escrow company reasonably acceptable to the Trustee <u>(the "**Escrow Agent**")</u>; or (iv) deliver a cashier's check payable to the Trustee on behalf of the bankruptcy estate. The Deposit Amount shall be held by the attorney (if subpart (i) or (ii) applies) or by the <u>Escrow Agent (if subpart (iii) apply) or by the Trustee if subpart (iv) apply</u> pending completion of the Auction and may only be returned or distributed in accordance with the applicable provisions of these Sale Procedures (including <u>Section 14</u> below) and the orders of the Bankruptcy Court. If the Prevailing Bidder (as defined below) is an entity other than the Initial Bidder, the Deposit Amount shall be wired to the Trustee's law firm trust account (or deposited if held in the form of a cashier's check) upon completion of the Auction and declaration of the identity of the Prevailing Bidder. The Initial Bidder shall have posted a Deposit in the total amount of $950,000 by the close of business on August 12, 2013 with its escrow agent as accepted by the Trustee, subject otherwise to the same terms and conditions as contained in the Sale Motion and Sale Agreement.

      (i)    Include a commitment to close and consummate the Sale promptly following entry of the Sale Order (as defined in the Sale Motion), assuming no stay thereof.

      (j)    Provide for the Overbidder's consent to the exclusive jurisdiction of the Bankruptcy Court as to the interpretation and enforcement of the Initial Overbid, the Deposit Amount and the Sale Procedures.

Sufficiency of compliance with each of the above provisions shall be determined by the Trustee in his reasonable discretion.

4. **Overbid Deadline.** Any competing Initial Overbid, together with the Deposit Amount, must be delivered Trustee, along with a copy to the BA in a manner such that the Initial Overbid is actually received by 5:00 o'clock p.m. Eastern on the September 3, 2013 and as Noticed in the Sale Motion (the "**Overbid Deadline**").

5. **Non-Conforming Bids Disqualified from Auction.** Any entity (other than the Initial Purchaser) that fails to submit a timely, conforming Initial Overbid as set forth above, as determined by Trustee in its reasonable discretion, shall be disqualified from bidding for any of the Sale Assets at the Auction.

6. **The Auction and Procedures.** In the event that one or more timely, conforming Initial Overbids are submitted (each person who has submitted such a timely, conforming Initial Overbid (each, a "**Qualified Overbid**") shall be referred to herein as a "**Qualified Overbidder**"), the Trustee shall conduct the Auction, in which only the Initial Purchaser and all Qualified Overbidders may participate. If, however, no Qualified Bid is delivered in accordance with these Sale Procedures by the Overbid Deadline, then an Auction will not be held, and Trustee shall so notify the Initial Purchaser no later than one (1) business

6

day after the Overbid Deadline. The Auction, if necessary, shall be held subject to and under the following procedures and rules:

(a) The Auction shall commence on September 5, 2013, 1:00 o'clock p.m. Eastern (the "**Auction Date**"), and be conducted on site at the Debtor's former offices (Suite 100, 5420 Wade Park Blvd, Raleigh, NC; or such other location as may be determined by Trustee and communicated to all Qualified Overbidders at least two (2) business days before the Auction Date:

(b) All bidders must be present in person, and cannot participate in the Auction by telephone, video, or other means. Only the Initial Purchaser and Qualified Overbidders may bid at the Auction. By at least the day prior to the Auction, each Qualified Overbidder who has timely submitted a Qualified Overbid shall inform the Trustee whether it intends to attend the Auction; if a Qualified Overbidder elects not to attend the Auction, its Qualified Bid shall nevertheless remain in effect and fully enforceable against such Qualified Overbidder.

(c) All bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and to have waived any right to jury trial in connection with any disputes relating to the Auction and/or the sale of the Sale Assets.

(d) Bidding will commence at the amount of the highest or otherwise best conforming Initial Overbid submitted by a Qualified Overbidder, as determined by the Trustee. If two or more Qualified Overbids were placed in equal amounts and terms, then the first fully Qualified Overbid received by the Trustee shall be deemed the opening Qualified Overbid.

(e) Each Qualified Overbidder shall be required to confirm that it has not engaged in any impermissible collusion with respect to the bidding or the sale, whether before, during or after the live auction. No Qualified Overbidder may consult with any other Qualified Overbidder prior to the conclusion of the Auction, or submit at any time a 'joint bid" with any other Qualified Overbidder without the express consent of the Trustee.

(f) The Trustee shall conduct the Auction. He shall announce the identity of each Qualified Bidder present and the designated spokesperson for each Qualified Bidder.

(g) The Trustee shall open by requesting oral subsequent Overbids from the Qualified Bidders present for an amount in excess of the Qualified Overbid by the sum of at least $50,000. Each subsequent bid by a Qualified Overbidder or the Initial Purchaser at the Auction shall be in increments of at least $50,000.00 in aggregate consideration to the bankruptcy estate above the previous bid, although higher bid increments will be accepted.

(h) Only holders of allowed valid secured claims are permitted to submit a credit bid at the Auction, and then only to the extent of the allowed amount of such entities' secured claim. To that end, only ERGS II, LLC is deemed to hold an allowed and valid secured claim for purposes of this section.

(i) The Initial Purchaser shall be entitled to "credit bid" the Break-up Fee. The amount of the Break Up Fee that would be required to be paid to Initial Purchaser if another Qualified Overbidder is accepted and the impact such amount would have in reducing the net potential value of such other Qualified Bid, shall be taken into consideration by Trustee in determining the highest and best bid made at the Auction. The Trustee shall keep a "tally board" in such form as may be convenient and understandable to show the history of the spoken bidding process, the current state and holder of the highest live Qualified Overbid.

(j) At anytime during the bid process, a party may request an opportunity to break and confer within its group and consult with others by telephone. The grant or denial of a break in the continuance bidding process shall be in the sole discretion of Trustee. If granted, the Trustee shall announce the exact time of the break and allow up to twenty (20) minutes for the parties to confer within their own respective group. The parties may not confer with other parties to the auction. The first party to return to the central location with a new live bid at least $50,000 higher than the previous high bid shall then hold the new high bid for the next round of the live auction. All decisions as to the exact beginning point of the next twenty minute round shall be determined by the Trustee in his discretion and announced to the parties.

(k) If, at the conclusion of the Auction, and consistent with the terms of these Sale Procedures, the Initial Purchaser has failed to make a bid that the Bankruptcy Court determines to be the highest or otherwise best bid, after taking into consideration the Break-up Fee, the Bankruptcy Court will authorize and approve a sale of the Sale Assets to the prevailing Qualified Overbidder.

(l) If however, the Initial Purchaser makes a bid that the Bankruptcy Court determines, consistent with the terms of these Sale Procedures, to be the highest or otherwise best bid compared to any bid by any other Qualified Overbidder, after taking into consideration the Break-up Fee, the Bankruptcy Court will approve the Sale Contract and authorize the Trustee to sell the Sale Assets to the Initial Purchaser, in accordance with the Sale Contract (as the terms may have been modified at the Auction).

(m) The Trustee reserves all rights to object to and oppose any request for a continuance or recess of the Auction or the Final Sale Hearing. At the Final Sale Hearing, the Bankruptcy Court will designate the highest or otherwise best bidder (whether it may be the Initial Purchaser or a Qualified Overbidder) as the prevailing bidder (the "**Prevailing Bidder**," it being understood that, in the event that no Auction is conducted because no Qualified Overbids are timely submitted, such term means Initial Purchaser as the highest or otherwise best bidder).

(n) In the event a Qualified Overbidder is determined to be the Prevailing Bidder at the Auction, the Trustee shall designate the next and otherwise best bidder after the Prevailing Bidder to serve as the "**Back-Up Bidder**" (and its bid being deemed the "**Back-Up Bid**"). The Back-Up Bid shall remain effective and its Deposit remain in place for the Back-Up Bid pending closing of the transaction with the Prevailing Bidder as determined at the Auction. If the Prevailing Bid is

8

       not approved by the Bankruptcy Court at the Final Sale Hearing or should such Prevailing Bidder fail to close for whatever reasons, then the Back-Up Bidder shall close on its Back-up Bid; provided, however, that if the Initial Purchaser is the Back-Up bidder, then the Initial Purchaser shall consummate a transaction with Seller on the terms set forth in the Sale Contract (as the same may have been amended at such Auction), at its Back-Up Bid net of a credit against the Back-Up Bid equal to the amount of its Break Up Fee.

.

    (o)    At the conclusion of the Auction, the Trustee shall announce the identity of the Prevailing Bidder and the amount of the last and highest bid. He shall also announce the next highest bidder, which entity shall be deemed the "**Backup Bidder**" and shall be subject to the terms of the Sale Order regarding the same.

7.    **Objection.** Any objection (an "**Objection**") to the Sale Motion, must be served on the Notice Parties and filed with the Bankruptcy Court in a manner such that the Objection is actually received by such parties and the Bankruptcy Court not later than 5:00 p.m. Eastern on **September 6, 2013** (the "**Objection Deadline**") as noticed in the Notice of Sale that is approved by the Sale Procedures Order. The Trustee and other parties in interest shall not be required to file responses to any Objection, but if desired shall do so at least one (1) business day before the Final Sale Hearing. The Initial Purchaser shall be deemed to be a party in interest for all purposes at the Final Sale Hearing.

8.    **Final Sale Hearing.** The Final Sale Hearing to approve the Prevailing Bidder shall be held at 10:00 o'clock a.m. on **September 10, 2013**, in the U.S. Bankruptcy Court in 3rd Floor Courtroom, 300 Fayetteville Street, Raleigh, North Carolina, as noticed in the Notice of Sale that is approved by the Sale Procedures Order. The Prevailing Bidder shall appear in person at the Final Sale Hearing, or through a duly authorized representative and not solely through counsel.

9.    **No Conforming Overbids.** If no timely conforming Initial Overbids are submitted by the Overbid Deadline and no objections are timely submitted by the Objection Deadline, the Trustee shall so notify the Bankruptcy Court and request that it enter <u>the Sale Order attached to the Notice of Sale</u> ex parte <u>without necessity of having a Final Sale Hearing.</u>

10.    **Break-up Fee.** In the event that the Initial Purchaser is not designated as the Prevailing Bidder then the Trustee shall pay to the Initial Purchaser a break-up fee of $300,000.00 (the "**Break-up Fee**"). <u>The Trustee shall be obligated to pay the Break-Up Fee to the Initial Purchaser from the proceeds of closing with the Prevailing Bidder or sooner to the extent provided in the Order Approving Sale and such obligation shall be treated as an allowed administrative expense of the Debtor's chapter 7 bankruptcy case.</u>

11.    **Disposition of Deposits.**

    (a)    <u>Deposits Submitted by Bidders Other Than the Initial Purchaser</u>. Promptly following the Bankruptcy Court's determination of the Prevailing Bidder, the deposits submitted by any Overbidders shall be returned to each such Overbidder other than the Prevailing Bidder and the Back-up Bidder. The deposit of the

9

        Prevailing Bidder (other than the Initial Purchaser), together with any interest earned thereon, shall be used to pay the Break-up Fee to the Initial Purchaser within three (3) days of entry of an order approving the Sale to such other Prevailing Bidder, with the remaining amount retained as earnest money to be used in the following ways: (i) applied at closing as a credit toward the purchase price of the Prevailing Bidder or, if the purchase price is paid in full at closing, returned to the Prevailing Bidder, (ii) if the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Prevailing Bidder, the deposit shall be retained by the Trustee as liquidated damages, or (iii) in the event that the sale to the Prevailing Bidder shall fail to timely close by reason of a breach or default of the Trustee, the deposit, net of the Break-up Fee, shall be returned to the Prevailing Bidder.

    (b)    <u>Deposit Submitted by the Initial Purchaser</u>. Disposition of the deposit submitted by the Initial Purchaser shall be governed by the terms of the Sale Contract.

12.    **Headings.** The headings of all sections of these Sale Procedures are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit or aid in the construction or interpretation of any term or provision hereof.

13.    **Disputes.** Any dispute governing the Sale or the Sale Procedures, including the deposits, shall be subject to the *in rem* and *in personam* jurisdiction of the Bankruptcy Court.

[End of Document]